**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY WILLIAMS, *et al*.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:08-CV-00046** |
| | ) | |
| **DUKE ENERGY CORPORATION,** | ) | **Judge Edmund A. Sargus** |
| *et al.*, | ) | **Magistrate Judge Mark R. Abel** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT DUKE ENERGY CORPORATION'S MEMORANDUM**
**IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION**
**<u>FOR CLASS CERTIFICATION</u>**

James A. King (0040270)
Trial Attorney
PORTER ,WRIGHT, MORRIS & ARTHUR LLP
41 South High Street
Columbus, Ohio  43215-6194
Tel: (614) 227-2051
jking@porterwright.com

Mark D. Hopson (*admitted pro hac vice*)
Frank R. Volpe (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
Tel: (202) 736-8000
Fax: (202) 736-8711
mhopson@sidley.com
fvolpe@sidley.com

*Counsel For Defendant, Duke Energy Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................1

BACKGROUND ......................................................................................................................3

I.      Plaintiffs' Theories Of The Class's Injuries Throughout This Litigation ...........................4

II.     The Theory Of Injury Plaintiffs Rely On For Purposes Of Class Certification ..................6

ARGUMENT .............................................................................................................................7

I.      Plaintiffs Cannot Certify The Business Competitor Subclass's Competitive Injury
       Claims Under Rule 23(A)(2) Because They Cannot Establish Such Injuries With
       Common Proof .....................................................................................................................9

II.     Plaintiffs Cannot Certify The Full Class's Claims Under Rule 23(a)(2) Because
       Their Request For "Across-The-Board" Rebates Is Not Legally Cognizable, And
       Their Only Legally Cognizable Claim Requires Proof Of Competitive Injuries .............13

III.    Plaintiffs Cannot Certify The Full Class's Claims Under Rule 23(a)(2) Because
       They Cannot Prove Any Class Member Was Wrongfully Denied A Rebate
       Without Individualized Evidence That The Class Member Is Similarly Situated
       To A Rebate Recipient ......................................................................................................16

       A.     To Establish That Duke's Selective Payment Of Rebates Was Improper,
             State Law Requires Individualized Evidence That Rebates Were Denied
             To Customers Similarly Situated To The Rebate Recipients ...............................17

       B.     The Full Class Cannot Be Certified Because It Contains Residential
             Customers That Lack Standing To Challenge Rebates Paid To Non-
             Residential Customers In Different Tariff Groups ...............................................20

       C.     Smaller Classes Consisting Only Of Non-Residential Customers Still
             Could Not Be Certified Because Those Customers Cannot Prove A
             Common Injury Through Common Proof ............................................................21

CONCLUSION .......................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. Carr*,
    369 U.S. 186 (1962) ...................................................................................15

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ...................................................................10

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ...................................................................................20

*Boro Hall v. Metro. Tobacco Co.*,
    74 F.R.D. 142 (S.D.N.Y. 1977) ...............................................................10

*Cincinnati N. R.R.. v. PUCO*,
    156 N.E. 506 (1927) ...................................................................................13

*Comcast Corp. v. Behrend*,
    133 S.Ct. 1426 (2013) ...............................................................................7, 9

*Davis v. Cintas Corp.*,
    __ F.3d __, 2013 WL 2343302 (6th Cir. May 30, 2013) ...........................7

*DiFranco v. FirstEnergy Corp.*,
    134 Ohio St. 3d 144 (2012) ...................................................................3, 18

*Flint Hills Res. Alaska, LLC v. FERC*,
    627 F.3d 881 (D.C. Cir. 2010) .............................................................14, 15

*Gold Strike Stamp Co. v. Christensen*,
    436 F.2d 791 (10th Cir. 1970) .................................................................10

*Halvorson v. Auto-Owners Ins. Co.*,
    __ F.3d __, 2013 WL 3333061 (8th Cir. July 3, 2013) ...........................21

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) .......................................................................9

*Interstate Commerce Comm'n v. United States ex rel. Campbell*,
    289 U.S. 385 (1933) ...............................................................2, 8, 13, 14, 15

*Lewis v. Casey*,
    518 U.S. 343 (1996) ...................................................................................20

*Lewis v. Philip Morris Inc.*,
    355 F.3d 515 (6th Cir. 2004) .....................................................................10

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)....................................................................................15

*Mad Rhino, Inc. v. Best Buy Co.*
    No. 03-5604, 2008 U.S. Dist. LEXIS 8619 (C.D. Cal. Jan. 14, 2008) ...................10

*Mahon v. Ticor Title Ins. Co.,*
    683 F.3d 59 (2d Cir. 2012)...........................................................................21

*OCC v. PUCO,*
    856 N.E.2d 213 (Ohio 2006)........................................................................22

*Penn. R.R. v. Int'l Coal Mining Co.,*
    230 U.S. 184 (1913)....................................................................................14

*Perez v. Nidek Co.,*
    711 F.3d 1109 (9th Cir. 2013) .....................................................................21

*Pittsburgh & Lake Erie R.R. v. PUCO,*
    191 N.E. 467 (Ohio 1934)............................................................................13

*Randleman v. Fidelity Nat'l Title Ins. Co.,*
    646 F.3d 347 (6th Cir. 2011) .......................................................................11

*Rivera v. Wyeth–Ayerst Labs.,*
    283 F.3d 315 (5th Cir. 2002) .......................................................................21

*Schlaud v. Snyder,*
    __ F.3d __, 2013 WL 2221589 (6th Cir. May 22, 2013).....................................12

*Sutton v. St. Jude Med. S.C., Inc.,*
    419 F.3d 568 (6th Cir. 2005) .......................................................................21

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.,*
    546 U.S. 164 (2006)..........................................................................2, 10, 12

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ...................................................................... *passim*

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982)....................................................................................15

*Weiss v. PUCO,*
    734 N.E.2d 775 (2000)................................................................................18

*Williams v. Duke Energy Int'l, Inc.,*
    606 F. Supp. 2d 783 (S.D. Ohio 2009), *rev'd and remanded,* 681 F.3d 788 (6th Cir. 2012), *cert. denied,* 133 S. Ct. 933 (2013).............................................................3

*Williams v. Duke Energy Int'l, Inc.*,
  681 F.3d 788 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 933 (2013) ................................. *passim*

**STATUTES**

15 U.S.C. § 13 ........................................................................................................... 2

18 U.S.C. § 1962(c) ................................................................................................... 2

R.C. § 4905.32 ....................................................................................................... 3, 17

R.C. § 4905.33 ....................................................................................................... 3, 17

**RULE**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

Defendant Duke Energy Corporation[1] hereby respectfully submits this opposition to Plaintiffs' Renewed Motion for Class Certification ("Motion").

## SUMMARY OF ARGUMENT

Plaintiffs cannot certify a class on any claim they raise here because Plaintiffs cannot prove that members of the putative class suffered the same injury using common proof.  Federal Rule of Civil Procedure 23(a)(2) requires Plaintiffs to establish such commonality among the class members.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-52 (2011).  Plaintiffs' inability to do so is fatal to their attempt at certification.

Plaintiffs attack the legality of option payments—"illegal rebates,"[2] in Plaintiffs' words—that a Duke affiliate, DERS, paid to 22 large industrial ratepayers.  Plaintiffs allege that these rebates "generally affected" *all* of DE-Ohio's electricity customers—"hundreds of thousands" of residential and non-residential ratepayers—and seek to include them all in this class action.  Mot. at 8, 22.

Throughout this litigation, Plaintiffs have struggled to articulate a legally cognizable theory of how these rebates paid to *others* injured *them*.  Plaintiffs have alleged different possible injuries at different times in this litigation to suit the exigencies of the moment.  Their instant

---

[1] Plaintiffs' First Amended Complaint names Duke Energy Corporation "dba Duke Energy International, Inc., Duke Energy, Inc., and Duke Energy Corp." as the party defendant.  First Am. Complt. ("FAC") at 1 (May 30, 2008) (Dkt. No. 27).  Duke respectfully submits that this is not a proper defendant.  All of the actions forming the subject of Plaintiffs' allegations focus on the conduct of Duke Energy Ohio, Inc. ("DE-Ohio") and Duke Energy Retail Sales ("DERS"), neither of which is named as a defendant in this case.  When addressing Plaintiffs' specific allegations against these two entities, this Memorandum uses the entities' proper names.  When addressing Plaintiffs' generalized allegations against the Duke organization as a whole, this Memorandum uses the term "Duke" for the sake of simplicity.

[2] The payments Plaintiffs describe as "illegal rebates" paid to "favored customers," Mot. at 1-2, were, in fact, lawfully-negotiated option agreements.  Duke unequivocally rejects Plaintiffs' description of the option agreements but, for purposes of this Motion only, adopts Plaintiffs' terminology solely for the sake of simplicity.

Motion alleges three.  But none of Plaintiffs' shifting explanations of their injuries can obscure the fatal defect in their request for class treatment:  by purporting to attack only the alleged rebates—and not the legality of the rates they themselves paid—Plaintiffs have pled claims that inescapably require highly individualized proof of injury and cannot be certified under Rule 23.

First, Plaintiffs cannot certify the Business Competitor Subclass's claims for injunctive and declaratory relief under the Robinson-Patman Act ("RPA"), 15 U.S.C. § 13, on the theory that the payment of rebates to others caused competitive injuries to Subclass members.  *See* Part I, *infra*.  Competitive injury can only be proven with individualized evidence of "actual competition" between specific class members and specific rebate recipients.  *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 177 (2006).  That precludes certification of these claims.

Second, Plaintiffs cannot certify the full class's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and state law on the theory that the class is "legally entitled" to an "across-the-board" extension to them of the rebates.  Mot. at 26; *see* Part II, *infra*.  The Supreme Court has made clear that customers who do not challenge the filed rate and instead claim rebates paid to others were illegal or improper can establish injury only by demonstrating that the rebates caused them competitive harm.  *Interstate Commerce Comm'n v. United States ex rel. Campbell*, 289 U.S. 385 (1933).  Plaintiffs cannot prove competitive harm without individualized evidence.

Finally, Plaintiffs cannot certify the full class's RICO and state law claims on the theory that Duke's selective payment of rebates was illegal, and that Duke conspired to fraudulently conceal that illegality from the public.  *See* Part III, *infra*.  Duke's selective payment of rebates can only be illegal under state law if Plaintiffs can prove that each class member was similarly

situated to a rebate recipient.  R.C. 4905.32, 4905.33; *DiFranco v. FirstEnergy Corp.*, 980 N.E.

2d 996 (Ohio 2012).  That showing requires highly individualized proof.

Plaintiffs have thus failed to identify *any* claim susceptible of common proof under Rule

23(a)(2), and their Motion should be denied.

## BACKGROUND

Plaintiffs brought this putative class action on behalf of "[a]ll" residential and non-

residential ratepayers that "received retail electric generation service" from DE-Ohio between

2005 and 2008, "except for the 22 favored large customers" who received rebates.  Mot. at 2, 8.

Plaintiffs allege that Duke used DERS to pay the favored customers rebates from the rate

approved by the Public Utilities Commission of Ohio ("PUCO") for DE-Ohio's electricity

services.  Plaintiffs argue that Duke ordered DERS to pay the rebates as a *quid pro quo* for the

favored customers' agreement to withdraw their opposition to a rate stabilization plan ("RSP")

DE-Ohio's predecessor had submitted to the PUCO for approval.  *Williams v. Duke Energy Int'l,*

*Inc.*, 606 F. Supp. 2d 783, 784-86 (S.D. Ohio 2009).

Plaintiffs allege that Duke's selective payment of the rebates violated federal and state

law.  Under federal law, Plaintiffs claim that Duke violated the RPA and RICO.  FAC ¶¶ 30-50.

Under state law, Plaintiffs claim that Duke violated the Ohio Corrupt Practices Act, R.C.

2923.31, engaged in a civil conspiracy to violate Ohio's statutes prohibiting price discrimination,

R.C. 4095.32 and 4095.33(A), and committed common-law fraud.  FAC ¶¶ 38, 51-61.

In the instant Motion, Plaintiffs seek to litigate these claims on behalf of a class

consisting of "*all*" of DE-Ohio's "business and residential electricity ratepayers" that did not

receive a rebate—"hundreds of thousands" of electricity customers across the State.  Mot. at 18,

22.  Plaintiffs propose to create separate subclasses of "residential" and "business" ratepayers, *id.*

at 18, and to further divide the "business ratepayers" into (1) a subclass of businesses that compete with the rebate recipients (the "Business Competitor Subclass"), and (2) a group of all other business ratepayers, who do not so compete.  *Id.*

## I.      Plaintiffs' Theories Of The Class's Injuries Throughout This Litigation.

Throughout this litigation, Plaintiffs have struggled to explain how any putative class member suffered injury due to the fact that a rebate was paid to someone else.  Because Rule 23(a)(2) requires Plaintiffs to prove that all class members suffered the "same injury," and do so using common proof, *Wal-Mart*, 131 S. Ct. at 2551, it is useful to review the injuries Plaintiffs have alleged to date.

*Plaintiffs' Initial Complaint*: Plaintiffs commenced this action on the theory that Duke "induced the PUCO to approve" the RSP by paying rebates to favored customers in exchange for their withdrawal of their opposition to the RSP.  Complt. ¶¶ 2, 15 (Jan. 16, 2008) (Dkt. No. 1). Plaintiffs argued that this injured the class because the PUCO would have approved different rates had it known about the rebates.  *Id.* ¶¶ 28-55.  Duke moved to dismiss that complaint for lack of standing, explaining that Plaintiffs' theory rested on impermissible speculation about hypothetical actions of the PUCO.  Duke Mot. to Dismiss at 9, 20-25 (Mar. 21, 2008) (Dkt. No. 16).  Plaintiffs withdrew that complaint before briefing on Duke's motion was complete.

*Plaintiffs' First Amended Complaint*: Plaintiffs then abandoned their first theory of injury and argued that they were not challenging the legality of the PUCO-approved rate paid by the class, but were only claiming that the rebates paid to others were illegal discounts.  FAC ¶ 2. Plaintiffs alleged that they,

> *do not challenge* as illegal, illegitimate, unfair, or unjust *the rate increase approved by the PUCO*, nor any rates resulting from it.  Rather, *plaintiffs simply challenge* as illegal, illegitimate, unfair, and unjust *the kickbacks* that the conspirators paid in *the form of exclusive rebates to large customers*, pursuant to secret side deals.

*Id.* (emphases added).  Plaintiffs argued that, although the rebates were "illegal" discounts from the filed rate, once Duke "decides to give customers a rebate or refund, it must give that rebate or refund to all customers receiving like services."  Plaintiffs' Response in Opposition to Mot. to Dismiss Amended Complt. at 1 (Aug. 14, 2008) (Dkt. No. 47).  Plaintiffs thus claimed they were entitled to recover the difference in price between the filed rate and the discounted rate the favored customers received.  *Id.*

This Court dismissed Plaintiffs' claims.  It recognized (correctly, in Duke's view) that Plaintiffs' challenges to the rebates were essentially claims that Plaintiffs should have paid an effective rate lower than the filed rate; such claims were thus barred by the filed-rate doctrine and the PUCO's exclusive jurisdiction.  *Williams*, 606 F. Supp. 2d at 790-92.

***Plaintiffs' Appeal***:  In arguing on appeal that their claims challenging the legality of the rebates were not barred by the filed-rate doctrine, Plaintiffs repeatedly stressed that the rebates caused competitive injuries to DE-Ohio's business customers.  *See* Br. of Appellants at 6-7, *Williams v. Duke Energy Int'l, Inc.*, No. 10-3604 (6th Cir. July 22, 2010) ("Br. of Appellants") (seeking relief for "damages for the competitive injuries suffered"); *see also id.* at 42 (arguing that Plaintiffs were seeking "'damages for past anti-competitive conduct'").

Plaintiffs expressly argued that their RPA, RICO, and state-law fraud claims were premised on competitive injuries.  *See* Reply Br. of Appellants at 13, *Williams v. Duke Energy Int'l, Inc.*, No. 10-3604 (6th Cir. Oct. 20, 2010) (RPA) (alleging "lost profits and sales"); *id.* at 21 n.13 (RICO) (arguing that "the kickback scheme has caused Plaintiffs to 'los[e] profits and sales to the favored purchasers'" and that "'Plaintiffs have been directly injured in their business and property as a result of [the unlawful and anticompetitive scheme]'") (alterations in original); *id.* at 24 (common law fraud) (arguing that the rebates caused the class members' injuries "[f]or

the reasons previously stated in Plaintiffs' response to Duke's RICO arguments"). Plaintiffs

argued no contrary theory on their remaining state law claims. *See*, *e.g.*, *id.* at 8-9 (arguing that

"the kickbacks alone can[] cause Plaintiffs injury . . . in the same way any benefit improperly

given a competitor causes injury to a competing plaintiff").

In reversing this Court, the Sixth Circuit likewise focused on the alleged competitive

harms. As that Court explained, "Plaintiffs do not challenge whether the rates set by the PUCO

were reasonable; rather, they contend that Defendants conspired to aid certain favored companies

in avoiding paying the actual filed rate, and that this action on the part of Defendants harmed

Plaintiffs by giving the favored companies *competitive advantage* over Plaintiffs." *Williams v.

Duke Energy Int'l, Inc.*, 681 F.3d 788, 797-98 (6th Cir. 2012) (emphasis added). Thus, the Sixth

Circuit held that Plaintiffs' federal claims were not barred by the filed-rate doctrine. *Id.*

## II.    The Theory Of Injury Plaintiffs Rely On For Purposes Of Class Certification.

Having stressed on appeal that they were seeking "damages for the competitive injuries

suffered," Br. of Appellants at 6-7, in this class certification proceeding, Plaintiffs now relegate

their "competitive injury" theory to a footnote. Plaintiffs concede that proof of competitive

injury requires individualized evidence that precludes certification. Mot. at 5, 29-30 (explaining

that Plaintiffs have redefined their claims to avoid "asking for individualized competitive injury

damages for any one member of [the Business Competitor] subclass"). They now allege

competitive injuries only in support of their claims for injunctive and declaratory relief under the

RPA, and only on behalf of the Business Competitor Subclass. Mot. at 18-19.

The full class does not allege any competitive injuries. Mot. at 18-19; Plaintiffs'

Responses to First Set of Interrogatories at 11-13 (June 14, 2013) ("Interrog. Resp."). Instead,

the full class is seeking damages on the theory that Duke was "legally mandated" to pay rebates

to *all* residential and non-residential customers "across-the-board." Mot. at 26. As demonstrated below, none of Plaintiffs' claims can be certified under Rule 23(a)(2).

## ARGUMENT

Class certification under Rule 23 is an "'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Davis v. Cintas Corp.*, __ F.3d __, 2013 WL 2343302, *4 (6th Cir. May 30, 2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-07 (1979)). "To come within the exception, a party seeking to maintain a class action 'must *affirmatively demonstrate* his compliance'" with both Rule 23(a) and Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (emphasis added).

Rule 23(a) sets forth "four requirements": (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims or defenses of the representative parties must be "typical of the claims or defenses of the class"; and (4) the representative parties must "fairly and adequately protect the interests of the class." *Davis*, __ F.3d __, 2013 WL 2343302, at *4-5 (citing Rule 23(a)). "If the plaintiff does not satisfy each of these requirements, her class claim fails at the threshold," and it is unnecessary to consider the requirements of Rule 23(b). *Id.* at *5.

Here, Rule 23(a)(2)'s commonality requirement is a hurdle Plaintiffs cannot clear. Plaintiffs may not satisfy this requirement merely by demonstrating that this litigation involves a handful of common questions, such as whether Duke paid the rebates and whether Duke's affiliate, DERS, is a "sham." *Wal-Mart*, 131 S. Ct. at 2550-51. Common questions alone are "not sufficient to obtain class certification" under Rule 23(a)(2). *Id.* at 2551. Rather, the "common contention" that is shared by the class must "generate common *answers* apt to *drive the resolution of the litigation*.'" *Id.* (emphasis added).

Here, as in any civil litigation, the question that will "drive the resolution of the litigation" is whether the members of the putative class suffered any injury.  To certify the claims they wish to assert in this litigation, Plaintiffs must therefore "demonstrate that the class members 'have suffered the *same injury*,'" *and* do so using common proof.  *Id.* (emphasis added).

Plaintiffs cannot satisfy this test.  Each injury they allege requires an examination of each class member's individual circumstances, making certification impossible.  First, Plaintiffs cannot prove that any member of the Business Competitor Subclass suffered competitive injury without individualized proof of actual competition with a rebate recipient.  Part I, *infra*.  Second, Plaintiffs cannot prove that the full class is entitled to relief on their "across-the-board" rebate theory without individualized proof of competitive injury either.  Part II, *infra*; *Campbell*, 289 U.S. at 390.  Finally, and in the alternative, Plaintiffs cannot prove that the full class is entitled to relief without individualized evidence that each class member was similarly situated to a rebate recipient under state law.  Part III, *infra*.

Plaintiffs argue otherwise, contending that they must only prove "a single issue common to all members of the class" to satisfy Rule 23(a)(2)'s test, and that they can satisfy the test with common proof that Duke paid rebates that were illegal.  Mot. at 22-25 (citing *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003)).  That is incorrect.  Under *Wal-Mart*, a class may be certified only a on common question that generates a "common answer" to *how* and *why* the class members were injured.  *Wal-Mart*, 131 S. Ct. at 2552 (common question must "produce a common answer to the crucial question *why was I disfavored*.").  Although all class members allege that Duke engaged in a single course of conduct, that does not establish a "common answer" as to how the individual class members were injured.

Plaintiffs bear the burden of proving a common injury.  Rule 23 "'does not set forth a mere pleading standard.'"  *Wal-Mart*, 131 S. Ct. at 2551.  Rather, to certify a class, Plaintiffs must prove that the requirements of Rule 23(a) and Rule 23(b) are "'in fact'" satisfied, "through evidentiary proof."  *Comcast*, 133 S. Ct. at 1432.  Plaintiffs' Motion completely lacks any evidence of common injuries.

Plaintiffs protest that discovery is ongoing, Mot. at 17, but that is no excuse.  Plaintiffs are bound to "affirmatively demonstrate [their] compliance" with Rule 23 through evidence. *Wal-Mart*, 131 S. Ct. at 2551.  And this Court should engage in "a rigorous analysis" to determine whether they have carried that evidentiary burden.  *Id.*  Moreover, there is no need for this Court to await completion of discovery to determine whether any such evidence exists.  As demonstrated below, there is simply no set of facts upon which common evidence could demonstrate a common injury to the class.

## I. Plaintiffs Cannot Certify The Business Competitor Subclass's Competitive Injury Claims Under Rule 23(a)(2) Because They Cannot Establish Such Injuries With Common Proof.

Plaintiffs concede they cannot prove damages to any class member on a competitive injury theory without individualized evidence.  Mot. at 5, 29-30.  Yet Plaintiffs still contend they can certify the Business Competitor Subclass's RPA claims for injunctive and declaratory relief. That is incorrect.  Plaintiffs cannot prove competitive injury without individualized evidence of actual competition between each Subclass member and a rebate recipient.  Therefore, they cannot obtain injunctive or declaratory relief on a classwide basis.

There are three elements to a claim under the RPA: "(1) a violation of the antitrust laws . . .; (2) individual injury resulting from that violation, and (3) measurable damages."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008).  In an RPA case such as this one—which alleges "secondary-line" price discrimination between "favored purchaser[s]"

9

and "disfavored purchaser[s]"—"the plaintiff[,] who is the disfavored purchaser, *must show that it competes with the favored purchaser.*" *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 521 (6th Cir. 2004) (per curiam) (emphasis added). The plaintiff must further prove that the discrimination between the favored and disfavored purchasers had an impact on that market. *See Volvo*, 546 U.S. at 181.

Both required showings necessitate individualized proof. To establish that a member of the Subclass "competes" with a rebate recipient, Plaintiffs must define the competitive market in which that Subclass member does business *and* prove that at least one rebate recipient participates in that market. *See Lewis*, 355 F.3d at 521 (citing 14 Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 2333b3 (1999)). To prove competitive impact, each class member must show how much the rebate altered that market. *Volvo*, 546 U.S. at 181.

Thus, the Subclass members' RPA claims are not susceptible of classwide proof because "the presence of individualized market conditions" almost invariably "require[s] individualized, not common, hypothetical markets [and] thus individualized, not common, evidence." *Blades v. Monsanto Co.*, 400 F.3d 562, 574 (8th Cir. 2005). Indeed, "courts have generally denied class action motions in Robinson-Patman Act cases" precisely because "'[t]he question whether a disfavored [purchaser] competed with a [favored purchaser] will have to be individually proved.'" *Boro Hall v. Metro. Tobacco Co.*, 74 F.R.D. 142, 145 (E.D.N.Y. 1977)).[3]

---

[3] In fact, since the RPA's enactment nearly eight decades ago, "[o]nly one published case has certified a Robinson-Patman class action," and that case is "frequently criticized and appears to be limited to its facts." *Mad Rhino, Inc. v. Best Buy Co.*, No. 03-5604, 2008 U.S. Dist. LEXIS 8619, *18 n.6 (C.D. Cal. Jan. 14, 2008). In *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791 (10th Cir. 1970), an RPA class action was certified where there was great commonality between *both* the putative class members *and* the favored customers—the favored customers were virtually every retail food store in Utah, while the disfavored customers that comprised the

That rule controls the outcome here. There is no commonality between the members of the Business Competitor Subclass *or* the rebate recipients, so competition must be "individually proved." *Id.* According to Plaintiffs, the Business Competitor Subclass will include *any* business customer that the "evidence" shows competed with a rebate recipient. Interrog. Resp. at 11. Plaintiffs refuse to define the membership of the Subclass with any greater specificity.[4] *Id.*; Mot. at 18. Thus, the Subclass could conceivably include all businesses in DE-Ohio's service area—regardless of industry, size, or location—with no common trait among the members.

There is no common trait among the alleged rebate recipients either. Customers that entered into option agreements with DERS hailed from a wide variety of industries and geographic regions within Ohio. The group includes hospitals, a steel company, and an airplane manufacturer, among others.[5] These companies participate in different competitive markets. Moreover, the option payments they received varied widely in amount. Exh. 1, DERS Option Payments Summary (reporting annual option payments ranging from as little as $180 to as much as $7.3 million). It is impossible for a class member allegedly competing with a hospital that received a small rebate to prove competitive injury using the same evidence as a class member allegedly competing with an airplane manufacturer that received a larger one.

---

putative class were virtually all the gas stations in the state. *Id.* No such commonality among either the putative class members or the rebate recipients exists here.

[4] Plaintiffs' definition of the Subclass is therefore unacceptably vague and imprecise, which is an "independent ground for denying class certification." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). Plaintiffs cannot define the Subclass in a way that requires this Court to answer the merits question of which businesses compete with rebate recipients before it can determine the businesses that are in the class. *Id.*

[5] There were a total of 24 counterparties to the option agreements (although Plaintiffs allege only 22): 12 hospitals, two healthcare facilities, two oil companies, two automobile manufacturers, an airplane manufacturer, a steel company, a manufacturer of cleaning supplies and other household products, a manufacturer of industrial gases, a supplier of specialty nutrition products and chemicals, and a supermarket chain. Exh. 1, DERS Option Payments Summary (2005-2008).

Plaintiffs have not met their burden.  *Wal-Mart*, 131 S. Ct. at 2551.  There is nothing in the record demonstrating evidence of competitive injury, and no plan for how Plaintiffs might establish competitive injury through common proof.

Instead, Plaintiffs argue they can simply rely on the "inference" that Duke's payment of rebates must have caused competitive injury to Subclass members.  Interrog. Resp. at 14; Mot. at 5, 24, 27-30.  That is incorrect.  An "inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time." *Volvo*, 546 U.S. at 177.  But this inference merely relieves Plaintiffs of proving the *amount* of their *damages*.  That burden is irrelevant here, because Plaintiffs do not seek damages. To proceed as a class action under the RPA, Plaintiffs must still prove the threshold fact that each Subclass member competes with a rebate recipient in the first place.  *Id.* at 177-79.  "Absent *actual competition* with a favored [purchaser], [a plaintiff] cannot establish the competitive injury required under the Act." *Id.* (emphasis added).[6]

Plaintiffs have adduced no evidence that they can prove "actual competition" between Subclass members and rebate recipients.  Their attempt to certify the Subclass's RPA claims for injunctive and declaratory relief therefore fails.

---

[6] The Sixth Circuit's ruling on appeal confirms this conclusion.  There, the Court recognized that Plaintiffs could rely on a "'reasonable inference'" of "competitive disadvantage" as a substitute for specific evidence of *damages* (not injury), only *if* Plaintiffs established "proof of defendant's wrongful acts *and* their tendency to injure plaintiffs' business.'" *Williams*, 681 F.3d at 801 (emphasis added).  While the Sixth Circuit held that Plaintiffs "adequately alleged injury and competitive disadvantage *sufficient to survive a 12(b)(6) motion to dismiss*," it passed no judgment on whether Plaintiffs had met their evidentiary burden for class certification, expressly noting that Plaintiffs had not yet "allege[d] the identity of the 'favored' or 'disfavored' purchasers, *or* the effect of the cost of electricity on their sales or profit margins." *Id.* (emphasis added).  Plaintiffs' lack of specificity was acceptable at the motion-to-dismiss phase because "discovery has not taken place." *Id.*  But, at this stage of the litigation, Plaintiffs have the heavier "burden of establishing their right to class certification" through actual evidence. *Schlaud v. Snyder*, __ F.3d __, 2013 WL 2221589, at *4 (6th Cir. May 22, 2013).

II. **Plaintiffs Cannot Certify The Full Class's Claims Under Rule 23(a)(2) Because Their Request For "Across-The-Board" Rebates Is Not Legally Cognizable, And Their Only Legally Cognizable Claim Requires Proof Of Competitive Injuries.**

Plaintiffs seek damages under RICO and state law solely on the theory that Duke was "legally mandated" to extend the rebates it paid to a few large industrial customers "across-the-board" to all of its residential and non-residential customers. Mot. at 26. In sum, Plaintiffs argue that every member of the full class is "legally entitled" to the rebates Duke wrongfully paid to others. *Id.* at 29. But Plaintiffs cannot escape the necessity of demonstrating competitive injury under this theory.

The Supreme Court has made clear that a plaintiff challenging a discriminatory rebate paid to someone else can only establish injury by showing that it suffered competitive harm because a competitor received the commodity in question at an unlawfully reduced price. *Campbell*, 289 U.S. at 390. Plaintiffs have already conceded they cannot prove competitive harm through common evidence. Mot. at 29-30.

In *Campbell*, the plaintiff, a railroad customer, brought suit before the Interstate Commerce Commission alleging that the railroad had provided other customers with discounted rates in violation of the Interstate Commerce Act.[7] 289 U.S. at 386. The plaintiff sought damages equal to the discounts given to others, but the Supreme Court denied such relief. The Court held that, even though the discounts provided to the other customers were illegal, the plaintiff, who paid the filed rate, had suffered no damage merely because "'some other [party] has paid less.'" *Id.* at 390. As the Court held, the filed rate establishes the "reasonable" price for the commodity, and a plaintiff can claim no monetary injury merely by showing that it paid the

---

[7] Ohio courts have held that Ohio's public utility statutes are modeled after the Interstate Commerce Act and are to be construed alike. *See, e.g.*, *Pittsburgh & Lake Erie R.R. v. PUCO*, 191 N.E. 467, 471 (Ohio 1934); *Cincinnati N. R.R. v. PUCO*, 156 N.E. 506, 508 (Ohio 1927) (Jones, J., concurring).

"reasonable" price, regardless of what others may have paid. *Id.* Instead, the only way such a plaintiff can prove it is "worse off" because someone else received a discount is if the discount caused the plaintiff a competitive injury. *Id.*

As the Supreme Court explained, if, "by reason of the discrimination, the preferred producers have been able to *divert business* that would otherwise have gone to the disfavored shipper, *damage has resulted to the extent of the diverted profits*. If the effect of the discrimination has been to force the shipper to sell at a *lowered market price, damage has resulted to the extent of the reduction*. But none of these consequences [*i.e.*, actual injury] is a necessary inference from discrimination without more." *Id.* at 390-91 (emphasis added).

In sum, when a customer alleges a discriminatory undercharge to someone else, *Campbell*'s "formulation of the 'question' makes clear [that] the nub of the issue is competitive injury." *Flint Hills Res. Alaska, LLC v. FERC*, 627 F.3d 881, 888 (D.C. Cir. 2010); *see also Penn. R.R. v. Int'l Coal Mining Co.*, 230 U.S. 184, 202-03 (1913) (a private plaintiff who "paid the lawful rates," but claims the utility provided illegal rebates to someone else cannot obtain monetary relief "for the amount of the rebate . . . but only for the [consequential] damages such illegal payment caused"). A plaintiff alleging a discriminatory rebate can "'recover only the actual damages it has suffered *in the marketplace* as a result of the discriminatory rate.'" *Flint Hills*, 627 F.3d at 888 (emphasis added). This rule controls the outcome here.

The Supreme Court has held that the question whether a putative class has satisfied Rule 23(a)'s commonality requirement often must "overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551. Here, it is clear as a matter of law that class members cannot state a claim simply by proving that others received rebates that they did not. Instead, to show a cognizable injury, each class member must prove they suffered competitive

harm as a result of a rebate paid to others.  And, as Plaintiffs concede, no such showing can be made on a class-wide basis using common evidence.

Plaintiffs' inability to establish competitive injury through common proof precludes them from certifying both the full class's claims for damages *and* for injunctive and declaratory relief. Proof of injury (or imminent injury) is an essential predicate for injunctive and declaratory relief. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.").  A plaintiff seeking such relief must have Article III standing, and Article III's "'injury-in-fact' test . . . requires that the party seeking review be *himself* among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (emphasis added); *see also Baker v. Carr*, 369 U.S. 186, 204 (1962) (plaintiffs must demonstrate a "personal stake in the outcome" to establish Article III standing).  As *Campbell* held, a customer that has paid the filed rate suffers no legal injury simply because a rebate is paid to someone else. 289 U.S. at 389-91.  Instead, "the nub of the issue is competitive injury." *Flint Hills*, 627 F.3d at 888.  Plaintiffs cannot establish that class members suffered the competitive harm necessary to meet Article III's injury-in-fact test without individualized proof.  Thus, Plaintiffs cannot certify either the full class's damages claims or its claims for injunctive and declaratory relief.

In addition—to the extent Plaintiffs attempt to argue otherwise in Reply—it is critical to emphasize that *Campbell*'s rule is distinct from the filed-rate doctrine and imposes an independent barrier to class certification.  Where applicable, the filed-rate doctrine bars damages claims.  The Sixth Circuit has now held that Plaintiffs' rebate claims are not necessarily barred by that doctrine because, it reasoned, those claims do not "challenge[]the underlying reasonableness or setting of filed rates." *Williams*, 681 F.3d at 798.  But even where the filed-

rate doctrine does not operate to bar claims, *Campbell* requires a plaintiff challenging a rebate paid to another to demonstrate competitive injury. That "competitive injury" theory is, of course, exactly the theory of injury that Plaintiffs' stressed before the Sixth Circuit and that the Sixth Circuit relied upon in its opinion. *See supra* at 6.

Duke does not seek to disturb the Sixth Circuit's ruling that Plaintiffs' claims are not barred by the filed-rate doctrine. Applying *Campbell* here does not foreclose individual Plaintiffs from pursuing claims (as would the filed-rate doctrine, were it held applicable). *Campbell* does, however, foreclose class certification, because Plaintiffs have conceded that it is impossible for them to prove competitive injury without individualized evidence, Mot. at 5, 29-30, and the necessity of such proof defeats the possibility of class certification. Accordingly, Plaintiffs' request to certify the full class's claims must be denied.

### III. Plaintiffs Cannot Certify The Full Class's Claims Under Rule 23(a)(2) Because They Cannot Prove Any Class Member Was Wrongfully Denied A Rebate Without Individualized Evidence That The Class Member Is Similarly Situated To A Rebate Recipient.

Finally, Plaintiffs cannot certify the full class's claims for the additional reason that, in order to establish that the rebates were unlawful, Plaintiffs must make individualized showings that each putative class member was similarly situated to a rebate recipient. The full class asserts claims for injunctive and declaratory relief under RICO and various state law theories. Mot. at 28; FAC ¶¶ 30-46, 51-64. In support of these claims, Plaintiffs proffer what they believe is substantial evidence that Duke paid rebates and conspired with others, including the Ohio Energy Group, a trade association representing many of the rebate recipients, to deliberately conceal its selective payment of rebates from the public. Mot. at 8-18 ("What Plaintiffs Have Learned Since Remand"). Yet the essential predicate for all of these claims is the underlying assertion that

Duke's selective payment of rebates was illegal in the first place.  Plaintiffs cannot prove that assertion with common evidence.

### A.    To Establish That Duke's Selective Payment Of Rebates Was Improper, State Law Requires Individualized Evidence That Rebates Were Denied To Customers Similarly Situated To The Rebate Recipients.

To show that it was illegal for Duke to selectively pay rebates, Plaintiffs must prove under state law that customers denied rebates were similarly situated to the rebate recipients. Plaintiffs have predicated their state claims on R.C. 4905.32 and 4905.33.  As the plain text of these statutes indicates, Plaintiffs cannot prove a violation merely by establishing that Duke paid rebates to some customers but not others.  Neither R.C. 4905.32 nor R.C. 4905.33 mandates that every rebate paid to one customer be paid across-the-board.  Neither statute states that any rebate paid to one customer and denied to another is unlawful.

Instead, these statutes prohibit the selective payment of rebates only if one customer is denied a rebate "under substantially the same circumstances and conditions" as another. Specifically, R.C. 4905.33 declares that "[n]o public utility shall . . . charge, demand, collect, or receive from any person . . . greater or lesser compensation for any service . . . than it charges, demands, collects or receives from any other person . . . for doing a like and contemporaneous service . . . under *substantially the same circumstances and conditions*."  (Emphasis added). Similarly, R.C. 4905.32 declares that "[n]o public utility shall refund" any portion of a scheduled rate "except such as are specified in such schedule and regularly and uniformly extended to all persons, firms, and corporations *under like circumstances for like, or substantially similar, service*." (Emphasis added).

The Ohio Supreme Court has confirmed this interpretation: "*[T]he statutes and case law do not require absolute uniformity in rates and prices*; they allow utilities to charge different and

unequal rates so long as there is some actual and measurable difference in the furnishing of services." *DiFranco*, 980 N.E. 2d at 1004 (emphasis added) (citing *Mahoning Cnty. v. PUCO*, 388 N.E.2d 739 (Ohio 1979)). Indeed, the Ohio Supreme Court singled out, as one of several examples, R.C. 4905.33 and stated that this provision, which is one of the two statutes Plaintiffs invoke, "*allows the charging of different or special rates unless the utility is performing 'a like and contemporaneous service under substantially the same circumstances and conditions.'" Id.* (emphasis added). In sum, 4905.32 and R.C. 4905.33 "do not prohibit all discrimination."[8] *Weiss v. PUCO*, 734 N.E.2d 775, 777 (2000). "[D]ifferences in prices charged" are not prohibited "[i]f the utility services rendered to customers are different or if they are rendered under different circumstances or conditions." *Id.* at 778. Such differences are prohibited only when imposed on customers "'*under substantially the same circumstances and conditions.*'" *DiFranco*, 980 N.E.2d at 1004 (emphasis added).

In this case, no class member can prove it was entitled to a rebate—and therefore, no class member can prove injury—without proof that it was similarly situated to a rebate recipient. That essential predicate to injury is the dispositive question that will "'drive the resolution of the litigation,'" and on which common evidence is essential. *Wal-Mart*, 131 S. Ct. at 2551; *supra* at 7-8. But, each class member only can prove it is similarly situated to a rebate recipient through individualized proof.

A brief study of DE-Ohio's tariff structure confirms this reality. Under the RSP—which the PUCO approved with modifications Plaintiffs do not challenge—DE-Ohio classified

---

[8] On appeal, the Sixth Circuit held that "[t]he selective payment of rebates constitutes a felony under Ohio law." *Williams*, 681 F.3d at 803. But, it did not suggest that *every* rebate paid to one customer and denied to another is *per se* illegal. The Sixth Circuit recognized that R.C. 4905.35 prohibits only those selective rebates that are "unreasonable," *id.* at 804, and nothing in its opinion repudiates the rule set forth in *Weiss* and *DiFranco*.

residential and non-residential customers into separate tariff groups, and charged them separate rates. Exh. 2, Direct Testimony of John P. Steffen on Behalf of the Cincinnati Gas & Electric Company, at Attachment JPS-11 (Apr. 15, 2004).[9] The RSP further divided non-residential customers into additional subgroups, each with a rate structure of its own. *Id.* Under the RSP, a customer's tariff group was determined by its energy using characteristics—e.g., the size of the customer's demand or service voltage level. Thus, non-residential customers receiving "distribution voltage" service were placed into one of three subgroups: DS ("distribution large," for customers with an average monthly demand greater than 15 kilowatts), DM ("distribution small," for customers with an average monthly demand of 15 kilowatts or less), or DP ("primary distribution service," for customers requiring distribution at voltages 12,500 to 34,500 volts). Exh. 5, Approved Tariffs, at Sheets Nos. 40.11, 43.11, and 44.11 (May 5, 2008). Non-residential customers receiving "transmission voltage service" were placed into subgroup TS. *Id.* Additional subgroups were established for non-residential customers requiring specialized services, such as outdoor lighting service. *Id.* at Sheet Nos. 62.11, 63.11.

Because Ohio law and the RSP allow DE-Ohio to charge different rates to customers in different tariff groups, no member of the putative class can begin to prove it is similarly situated to any rebate recipient without individualized evidence it was in the same tariff group. This defeats the possibility of class certification. *Wal-Mart*, 131 S. Ct. at 2551.

---

[9] *See* Exh. 3, PUCO Order on Remand at 28, 44, *In the Matter of the Application of CG&E to Modify Its Nonresidential Generation Rates ("In the Matter of CG&E")*, Nos. 03-93-EL-ATA *et seq.* (Oct. 24, 2007) (approving Duke's January 26, 2004 RSP as "subsequently modified" by "Duke Ex. 11," and with additional modifications imposed by the PUCO); Exh.4, Hr'g Tr. Vol. IV at 8, *In the Matter of CG&E*, Nos. 03-93-EL-ATA *et seq.* (May 26, 2004) (testimony of Steffen, J.) (testifying that Exhibit 11, cited above, was "a copy of my direct testimony" pre-filed on April 15, 2004).

**B.      The Full Class Cannot Be Certified Because It Contains Residential Customers That Lack Standing To Challenge Rebates Paid To Non-Residential Customers In Different Tariff Groups.**

Class certification also should be denied because the putative class contains members who lack standing.  The evidence, which Plaintiffs do not contest, indicates that DERS entered into option agreements with customers holding accounts in six non-residential tariff groups. Exh. 1, DERS Option Payments Summary (reporting option payments to non-residential ratepayers in the DP, DS, DM, TS, OL, and NSU tariff groups).  No residential customer received a rebate.  As a consequence, no residential customer has standing to challenge the rebates paid to customers in non-residential tariff groups.

To establish Article III standing, "[i]t is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected."  *Blum v. Yaretsky*,  457 U.S. 991, 999 (1982); *Lujan*, 504 U.S. at 560-61 (standing requires a "concrete" and "particularized" injury to the plaintiff itself).  Here, residential customers are not within the class of persons conceivably injured by rebates paid to customers in non-residential tariff groups.  R.C. 4905.32 and R.C. 4905.33 permit utilities to charge different rates to different types of customers, and the RSP—which Plaintiffs do not contest—specifically allows DE-Ohio to organize customers into separate tariff groups that pay separate rates.  Thus, rebates paid to customers in non-residential tariff groups did not result in injury to residential customers who paid their filed rate.[10]

---

[10] This also means that the named plaintiff Anthony Williams lacks standing because he is a residential customer.  As such, he cannot be an "adequate" representative under Rule 23(a)(4) for the putative class.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted).

This Court should deny class certification on the grounds that the putative class contains members without standing.  "Article III standing requirements apply equally to class actions." *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005).  "[A] class cannot be certified if it contains members who lack standing."  *Halvorson v. Auto-Owners Ins. Co.*, __ F.3d __, 2013 WL 3333061, at *5 (8th Cir. Jul. 2013); *see also Perez v. Nidek Co.*, 711 F.3d 1109, 1113-14 (9th Cir. 2013) (courts may rule on standing before they "'consider class certification'"); *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319 & n.6 (5th Cir. 2002) (same); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) (same).  A class including residential customers cannot be certified.

### C.    Smaller Classes Consisting Only Of Non-Residential Customers Still Could Not Be Certified Because Those Customers Cannot Prove A Common Injury Through Common Proof.

Even if the residential customers were removed from this action, it still would not meet the requirements of class certification.  DERS, the Duke affiliate that entered into option agreements, did not provide option payments (or "rebates") to the large industrial customers without consideration in return.  Instead, as DERS explained to the Ohio Supreme Court, under the operative agreements, DERS purchased the option to provide electricity service to those customers in the event market conditions allowed DERS to do so profitably.  Merit Br. of Intervening Appellees Cinergy Corp. and Duke Energy Retail Sales, LLC at 11-13, *OCC v. PUCO*, No. 08-367 (Ohio Sup. Ct. July 8, 2008) ("DERS Br."), *available at* http://www.sconet.state.oh.us/pdf_viewer/pdf_viewer.aspx?pdf=625220.pdf.  DERS was seeking customers for itself and, through these option agreements, provided an alternative rate option to customers who had publicly expressed dissatisfaction with the RSP for DE-Ohio's services.  *Id.* at 9, 11-13.  As the terms of the agreements reflect, they grant DERS the contractual right to

provide customers with electricity generation service at a price higher than the PUCO-approved RSP rate, if market price moved in that direction. *Id.*; Exh. 6, Option Agreement By And Between Cinergy Retail Sales, LLC and Tri-Health Hospitals (Dec. 29, 2004). Thus, each signatory to an option agreement was required to have both the willingness and the financial ability to assume the risk of an upward trend in market prices in exchange for an option payment.[11]

Any party alleging injury because it was denied a rebate would have to demonstrate that it was willing and able to assume similar risk. Such showing requires individualized evidence regarding each putative class member. For example, each putative class member would be required to submit a declaration or similar evidence establishing its financial capacity to assume the risk taken by the rebate recipients.

Thus, even if Plaintiffs could narrow the full class into subclasses of non-residential customers only, it would still be impossible for them to establish that each class member suffered the "same injury" for the same reasons. *See Wal-Mart*, 131 S. Ct. at 2552 (holding that, to obtain certification, class member must "produce a common answer to the crucial question *why was I disfavored*."). Plaintiffs bear the burden under Rule 23(a)(2) of proving otherwise, *id.* at 2551,

---

[11] As Exhibit 3 to their Motion, Plaintiffs attach an option agreement between DERS' predecessor, Cinergy Retail Sales, LLC, and a group of hospitals. That agreement is predicated on a different economic arrangement: DERS' predecessor agreed to provide generation service to the hospitals at a price determined through specified discounts to the RSP rate the parties to the agreement expected the PUCO would approve. Mot., Exh. 3 ¶ 1 (May 19, 2004). However, the PUCO issued an order four months after the option agreement was signed that significantly modified the proposed RSP rate. *OCC v. PUCO*, 856 N.E.2d 213, 220 (Ohio 2006) (describing PUCO's September 29, 2004 order). Under the express terms of the agreement, that action by the PUCO rendered the agreement void. *See* Mot., Exh. 3 ¶ B ("This agreement terminates . . . upon the occurrence of any of the following: . . . B. The Public Utilities Commission of Ohio, in Case. No. 03-93-EL-ATA or a related case necessary to carry out the terms and conditions of this agreement, fails to issue an order acceptable to Cinergy."). That agreement was never implemented. DERS Br. at 11-13. Instead, only agreements executed *after* the PUCO's ruling were implemented. The contract attached as Exhibit 6 to this filing is a representative example.

22

and offer no evidence whatsoever that common evidence can establish that even members of the same tariff groups suffered the same injury for a common reason.  The full class's claims for injunctive and declaratory relief under RICO and state law should not be certified.

## CONCLUSION

Based on the foregoing, Plaintiffs cannot establish a common injury on any of their claims with common proof.  Their Motion should therefore be denied.


Dated: July 22, 2013                                      Respectfully submitted,

                                                          /s/ James A. King
                                                          James A. King (0040270)
                                                          Trial Attorney
                                                          PORTER ,WRIGHT, MORRIS & ARTHUR LLP
                                                          41 South High Street
                                                          Columbus, Ohio  43215-6194
                                                          Tel: (614) 227-2051
                                                          jking@porterwright.com

                                                          and

                                                          Mark D. Hopson (*admitted pro hac vice*)
                                                          Frank R. Volpe (*admitted pro hac vice*)
                                                          SIDLEY AUSTIN LLP
                                                          1501 K Street, N.W.
                                                          Washington, D.C.  20005
                                                          Tel: (202) 736-8000
                                                          Fax: (202) 736-8711
                                                          mhopson@sidley.com
                                                          fvolpe@sidley.com

                                                          *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on July 22, 2013, a copy of the foregoing was filed

electronically using the Court's Case Management/Electronic Case Filing system (CM/ECF).

Notice of and access to this filing will be provided to all parties through CM/ECF.

*/s/ James A. King*