# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY WILLIAMS | ) | CASE NO. 1:08-CV-0046 |
| 8008 Innsbrook Place | ) | |
| Cincinnati, Ohio 45244 | ) | |
| | ) | Judge Sargus |
| BGR, INC. | ) | Magistrate Judge Abel |
| 6392 Gano Road | ) | |
| West Chester, Ohio 45069 | ) | |
| | ) | SECOND AMENDED |
| MUNAFO, INC. | ) | CLASS ACTION |
| 9141 Cincinnati-Columbus Road | ) | COMPLAINT AND |
| Cincinnati, Ohio 45241 | ) | JURY DEMAND |
| | ) | |
| AIKIDO OF CINCINNATI | ) | |
| 4727 Red Bank Road | ) | |
| Cincinnati, Ohio 45227 | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| DUKE ENERGYCORPORATION | ) | |
| dba DUKE ENERGY | ) | |
| INTERNATIONAL, INC., | ) | |
| DUKE ENERGY, INC., and DUKE | ) | |
| ENERGY CORP. | ) | |
| 526 South Church Street | ) | |
| Charlotte, NC 28202 | ) | |
| <u>Serve</u>: CT Corporation | ) | |
|     225 Hillsborough Street | ) | |
|     Raleigh, North Carolina 27603, | ) | |
| | ) | |
| DUKE ENERGY OHIO, INC. | ) | |
| 139 East Fourth Street | ) | |
| Cincinnati, OH 45202 | ) | |
| | ) | |
| **Defendants.** | ) | |

1.    This is a proposed class action brought by southern Ohio electricity users on behalf of southern Ohio businesses, other entities, and individual consumers purchasing electricity from a company that variously identified and referred to itself as Duke Energy, Duke Energy Ohio, Duke Energy Ohio, Inc., and Duke Energy Corporation dba Duke Energy International, Inc., Duke Energy, Inc., and Duke Energy Corp. (collectively "Duke Energy").   The company sued herein as Duke Energy Corporation has represented to this Court that it "is now known as Duke Energy Carolinas LLC and is a wholly-owned subsidiary of Duke Energy Corporation, a publicly-owned Delaware Corporation" and that the "entity named herein as Duke Energy International, Inc. was dissolved in May 2005 and no longer exists; it is a subsidiary of the entity named herein as Duke Energy Corporation."  Duke's Amended Answer, Doc. 129, ¶ 1, pp. 1-2.  The company sued herein as Duke Energy Corporation further has represented to this Court that, "through a merger, the companies formerly known as Cincinnati Gas & Electric ('CG&E') and Cinergy are now part of" the company sued herein as Duke Energy Corporation.  *Id.* at ¶ 9, p. 3.  The Sixth Circuit's opinion in Case No. 10-3604 identified CG&E as "predecessor-in-interest" to the since-dissolved Duke Energy International and identified Duke Energy Ohio, Inc. as a subsidiary of the company that was sued herein as Duke Energy Corporation, which

defendant claims is now known as Duke Energy Carolinas LLC. *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 793 (6th Cir. 2012); Doc. 129 at ¶ 1.

2.　　In violation of federal and Ohio law, CG&E, Cinergy, Duke Energy, and their legal counsel (collectively referred to as "the conspirators") conspired to and did engage in a pattern of deceptive, sham transactions that had the intended effect of granting illegal, inequitable, and unfair rebates paid exclusively to certain large customers in southern Ohio.

3.　　Under their scheme, the conspirators created and/or employed a sham entity called Cinergy Retail Services, LLC ("CRS"),[1] through which they funneled illegal payments to twenty-two large corporate customers in Greater Cincinnati.  These payments immediately followed those customers and/or their trade groups withdrawing their opposition to a major rate increase that CG&E sought from the Public Utilities Commission of Ohio ("PUCO").  Plaintiffs do not allege – and indeed take no position on whether – the PUCO would have approved the rate increase absent the side deals that induced the large corporate customers' withdrawal of their opposition to it.  Plaintiffs do not challenge as illegal, illegitimate, unfair, or unjust the rate increase approved by the PUCO, nor any rates resulting from it.  Rather, Plaintiffs simply challenge as illegal, illegitimate, unfair, and unjust the kickbacks that the

---

[1] Duke Energy Retail Sales LLC ("DERS"), a North Carolina limited liability company, is the successor to CRS, and has continued with the illegal activities begun by CRS.  As used in this Complaint, "CRS" includes "DERS."

conspirators paid in the form of exclusive rebates to large customers, pursuant to secret side deals.

4.      The conspirators have attempted to mislead their electricity users and the general public about, and conceal the existence of, their fraudulent, anti-competitive, illegal, and inequitable side deals.  The conspirators' scheme has resulted in substantial detriment and harm to thousands of southern Ohio businesses, political subdivisions, public institutions, and individual consumers.

5.      Plaintiff Munafo, Inc. is an Ohio corporation with its principal place of business in Cincinnati, Ohio, filing suit on behalf of itself and all similarly situated businesses affected by the conspirators' schemes (*i.e.*, proposed Subclass 1).

6.      Plaintiff BGR, Inc. is an Ohio corporation with its principal place of business in West Chester, Ohio, filing suit on behalf of itself and all similarly situated businesses affected by the conspirators' schemes (*i.e.*, proposed Subclass 1).

7.      Plaintiff Anthony Williams is a citizen and resident of the State of Ohio, filing suit on behalf of himself and all other similarly situated electricity users affected by the conspirators' schemes (*i.e.*, proposed Subclass 2).

8.      Plaintiff Aikido of Cincinnati is a non-profit Ohio corporation located in Cincinnati, Ohio, filing suit on behalf of itself and all other similarly situated electricity users affected by the conspirators' schemes (*i.e.*, proposed Subclass 2).

9.     Plaintiffs and the class they seek to represent do not include any businesses or individuals who entered into any of the alleged side deals with the conspirators.

10.     At the time this action commenced, Duke Energy Corporation dba Duke Energy International, Inc., Duke Energy, Inc., and Duke Energy Corp. was, and/or was alleged to be, a North Carolina corporation with its principal place of business in North Carolina, the successor to CG&E and Cinergy, and, with the merger of Duke Energy and Cinergy, a direct participant in the actions of the conspirators alleged herein.

11.     Duke Energy Ohio, Inc. is an Ohio public utility that sells electricity in southern Ohio and that was, along with its parent, its parent's legal counsel, its subsidiaries, its affiliates, its predecessor, and/or its predecessor's legal counsel, a direct participant in the actions of the conspirators alleged herein.

12.     The Court has original jurisdiction over all claims in this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, pursuant to 28 U.S.C. § 1337 because this action alleges violations of the Robinson-Patman Act, and pursuant to 28 U.S.C. § 1964(c) because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

13.     Furthermore, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the alleged state law claims.  As stated in the Sixth Circuit's opinion in Case No. 10-3604, this Court's "federal question subject-matter jurisdiction is sufficient

to allow supplemental jurisdiction" over Plaintiffs' state-law claims. *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 793 (6th Cir. 2012).

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims alleged herein occurred in Greater Cincinnati, as well as under 15 U.S.C. §§ 15, 22, and 26, and under 18 U.S.C. § 1965.

15. In 2003-2004, CG&E applied to the PUCO for a rate increase for electricity customers.

16. CG&E faced considerable opposition to this proposed rate increase from companies affiliated with groups such as Industrial Energy Users-Ohio ("IEU"), Ohio Hospital Association ("OHA"), and Ohio Energy Group ("OEG"), which included many of the largest companies and hospitals in the Greater Cincinnati area.

17. In 2004, Cinergy created CRS as a competitive retail electric service provider whose generation rates are not regulated by the PUCO. CRS had no employees and was not active. Both CRS and Cinergy purported to operate at 139 East Fourth Street, Cincinnati, Ohio. CRS's only function during this period was to process transactions on behalf of Cinergy. CRS was a sham controlled by the conspirators.

18. In 2004, IEU, OHA, and OEG suddenly and unequivocally changed their stance from opposing to supporting CG&E's rate increase. The PUCO approved the rate increase in 2004.

19.     Also in 2004, CRS entered into "Option Agreements" with IEU/OHA/OEG-affiliated companies, among others (the "Favored Customers"). These "Option Agreements" became effective in or about January 2005, and provided that CRS would kick back to these companies the equivalent of certain defined charges that the companies were required to pay to CG&E. The amount kicked back under these side deals represented a large portion of the rate increase that CG&E had requested and that the PUCO had approved.

20.     Because the contracts were with CRS, an affiliate of Cinergy whose generation rates are unregulated, the "Option Agreements" were not made public.

21.     In on-the-record proceedings before the Supreme Court of Ohio in Case Number 05-0946, the conspirators consciously and deceptively denied having any knowledge of the existence of any such side deals. (*See* Exhibit A.) In a further attempt to hide their wrongdoing from public scrutiny, the conspirators have attempted to conceal the unlawful terms of their "Option Agreements" behind a web of redactions. (*See* Exhibit B.)

22.     Between 2005 and 2008, although CRS did not supply any electric services, CRS paid out over $73,000,000 (seventy-three million dollars) in "Option Payments" to the Favored Customers.

23.     It is unknown to what extent any of the Favored Customers or any other Duke Energy customers not yet divulged to Plaintiffs continue to receive kickbacks or

rebates under agreements similar to the Option Agreements.  Discovery undertaken to date suggests that some Favored Customers received rebates beyond 2008.

24.     In violation of applicable law, the conspirators for four years (possibly more) paid the Favored Customers substantial rebates without extending such rebates to all Duke Energy electricity consumers.

25.     Plaintiffs propose to represent a class consisting of all ratepayers who received retail electric generation service from Duke Energy and/or Cinergy or their subsidiaries or affiliates at any time between January 1, 2005 and December 31, 2008 in the CG&E/Duke Energy electric service territory in southwestern Ohio *and* who did not receive rebates under the side agreements (referred to herein as "the Plaintiff Class"). This class would include all of Duke Energy's business and residential electricity ratepayers in its southwestern Ohio electric service territory except for the favored large customers who entered into side agreements (under which the illegal rebates have been paid) with Duke Energy or any of the conspirators.

26.     Plaintiffs further propose the following two subclasses:  Subclass 1 - All business ratepayers in the Plaintiff Class; Subclass 2 - All residential (*i.e.*, non-business) ratepayers in the Plaintiff Class.

27.     The proposed Plaintiff Class consists of tens of thousands, if not hundreds of thousands, of Duke Energy's electricity customers.  Therefore, the Plaintiff Class is so numerous and dispersed that joinder is impracticable.

28.     With the help of qualified counsel who are experienced in such litigation, Plaintiffs are capable of adequately representing the proposed Plaintiff Class for any and all purposes, in that Plaintiffs, like the other members of the proposed Plaintiff Class, were denied the rebates exclusively granted to the Favored Customers under the side deals.

29.     There are numerous questions of law and fact common to the Plaintiff Class, including but not limited to the following:  whether the conspirators conspired to and did engage in a pattern of deceptive, sham transactions that had the intended effect of granting illegal rebates exclusively to certain large customers; whether paying rebates only to certain large customers violated Ohio law; whether the conspirators violated the Robinson-Patman Act, the RICO statute, and the Ohio Corrupt Activity Act;  whether the conspirators have attempted to mislead their electricity users and the general public about, and conceal the existence of, their fraudulent, illegal, and corrupt scheme; whether the conspirators' scheme has resulted in substantial detriment and harm to thousands of southern Ohio businesses, political subdivisions, public institutions, and individual consumers who did not receive the rebates that the Favored Customers received; and whether punitive damages should be assessed against Duke Energy.

30.     In all relevant respects, Plaintiffs' claims are typical of those of the other Plaintiff Class members in that Plaintiffs, like the other members of the proposed class, were illegally denied the rebates given to the Favored Customers under the side deals.

31.     Certification of Plaintiffs' claims for class action treatment is appropriate pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, in that, under Rule 23(b)(1)(A), the prosecution of separate actions over these side deals by individual members of the Plaintiff Class would create the risk of inconsistent adjudications with respect to the individual members of the Plaintiff Class that would establish incompatible standards of conduct for the Defendants regarding the side deals; under Rule 23(b)(2), the conspirators, by entering into and carrying out these unlawful side deals, acted on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Plaintiff Class as a whole, halting the scheme and reversing its harmful effects; and, under Rule 23(b)(3), classwide questions concerning the conspirators' conduct and the harm thereby inflicted on Plaintiff Class members by far predominate over any questions affecting only individual Plaintiff Class members and a class action is far superior to any other available method for fairly and efficiently compensating Plaintiff Class members for the harm they suffered as a result of the conspirators' scheme.

## FIRST CLAIM FOR RELIEF

32.     Plaintiffs incorporate by reference and reallege each and every prior and succeeding allegation of this Complaint.

33.     CRS is an "enterprise" as defined by 18 U.S.C. § 1961(4) and/or Ohio Revised Code ("RC") § 2923.31(C).  It is a corporation that is an ongoing organization, separate and distinct from the pattern of racketeering and corrupt activity in which it was and is engaged.  The conspirators used CRS as an enterprise to issue illegal rebates for electricity to certain large customers.

34.     The conspirators were and are directly involved in the conduct of CRS's affairs by participating in the operation and management of CRS.

35.     The pattern of racketeering and corrupt activity involved in this case consists of multiple and repeated acts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, and money laundering, in violation of 18 U.S.C. § 1956.  In addition, for the state corrupt activity claims, the pattern of corrupt activity includes money laundering, in violation of R.C. § 1315.55, telecommunications fraud, in violation of R.C. § 2913.05, and obstructing justice, in violation of R.C. § 2921.32.  All of the acts constituting the pattern of racketeering activity (as defined in 18 U.S.C. § 1961(5)) and pattern of corrupt activity (as defined in R.C. § 2923.31(E)) are related and continuous in that they occurred daily and/or monthly from 2004 forward, with a threat of continuing illegal activity through 2008 and beyond.

36.     Publicly available documents reveal numerous false representations and material omissions that the conspirators made daily and/or monthly to the members of the Plaintiff Class in bills, in public statements, and on the Duke Energy website, to the effect that certain electricity charges were mandatory and unavoidable, when in fact the conspirators, through the sham entity CRS, were simultaneously relieving certain customers of those very same charges via the fraudulent and illegal racketeering and corrupt activity alleged herein.  For example, Duke Energy consistently has stated in its monthly electric bills to Plaintiffs that customers should consult its website for rate and billing information.  Duke Energy's standard customer agreement for both residential and commercial clients, which Duke Energy has transmitted by mail and wire to the Plaintiff class and has posted on its website, falsely states that Duke Energy customers cannot avoid the Rate Stabilization Charge (RSC), Annually Adjusted Component of the POLR Charge (AAC), Regulatory Transition Charge (RTC), Fuel and Purchase Power charge (FPP), Infrastructure Maintenance Fund charge (IMF), and System Reliability Tracker charge (SRT), when in fact these charges were rebated to Favored Customers pursuant to side deals with the conspirators.  Similarly, Duke Energy's website falsely states that the AAC rider is applicable to all customers except customers receiving generation service from a Certified Supplier ("CRES"), when in fact side deals with Favored Customers provided for a rebate of the AAC rider.  Duke Energy also has

misrepresented the legality of the side deals, including in public statements issued on or about January 17, 2008 and thereafter.

37.   The conspirators have engaged in a scheme and artifice to defraud Plaintiffs.  Since 2004, defendants repeatedly have used the mails or wires in furtherance of the scheme.  The conspirators sent Plaintiffs and the other members of the Plaintiff Class, or published misrepresentations and omissions in, materials intended for Plaintiffs and the other members of the Plaintiff Class, in particular representing that the charges comprising the rate increase were unavoidable and had to be paid, and omitting the material fact that CRS was kicking back those charges to certain other users, and, more recently, stating that the agreements are legal.

38.   The conspirators took and are continuing to take these actions with specific intent to deceive and defraud, and did in fact defraud, Plaintiffs.

39.   The total number of mail and wire fraud violations is too voluminous to recount, given that they were continuous and unabated from 2004 forward.  Plaintiffs actually and reasonably have relied, to their detriment, on these misrepresentations and omissions.  Had they known of the kickbacks paid by CRS and their illegality, they would have been in a position to prevent the advantage received by the Favored Customers and/or demand rebates be given legally and universally.

40.   The conspirators' pattern of racketeering and corrupt activity includes the repeated use of money laundering, in violation of both 18 U.S.C. § 1956 and R.C. §

1315.55.  The conspirators knew that the monies transmitted to the Favored Customers were illegal rebates, and carried on this activity using the transmittal through CRS to conceal and disguise the nature, source, ownership and control of those illegal payments.

41.     The conspirators' pattern of corrupt activity also includes violations of R.C. §§ 2921.03 and/or 2921.32, through their attempts to conceal physical evidence of their unlawful acts including the use of unwarranted redactions, and by their agent (legal counsel) falsely stating to the Supreme Court of Ohio that the existence of the side agreements was unknown.

42.     At all relevant times, the conspirators were "persons" as defined in 18 U.S.C. § 1961(3) and/or RC § 2923.31(G), who violated 18 U.S.C. § 1962(C) and/or RC §§ 2923.32 and 2923.34 by conducting the affairs of CRS through a pattern of racketeering and corrupt activity.

43.     Plaintiffs have been directly injured in their business and property as a result of these violations.   All Plaintiffs have suffered substantial damages as a proximate result of these violations.

44.     The electric power industry is composed generally of three functional levels:   production, transmission, and distribution.   Production encompasses the conversion into electric power of energy obtained from the combustion of fossil fuels, including moving water, or from atomic reaction.   Transmission refers to the moving of

electric energy via transmission facilities from points where the energy is generated to interconnection with other utilities and the distribution center. Distribution involves the delivery and sale of electricity to the ultimate consumer.

45.    At all relevant times, the conspirators comprised a large electric system operating throughout the United States and serving large areas of, inter alia, Ohio, Kentucky, and Indiana, supplying residential, commercial and industrial customers directly. The conspirators controlled extensive transmission lines in Duke Energy's service area.

46.    At all relevant times, the conspirators engaged in, and their activities affected, interstate commerce.

47.    At all relevant times, the conspirators have bought electric power from and sold it to electric utilities, generators and marketers located in several states, and have exchanged power among them across state lines. Upon information and belief, the sales of electric power in this case were and often are interstate in origin, particularly in times of high demand. The alleged violations of law described herein have affected, and are affecting, the flow of electric power in interstate commerce.

48.    At all relevant times, the conspirators have owned and controlled the only electric transmission facilities by which Plaintiffs can purchase power for use in southern Ohio.

## SECOND CLAIM FOR RELIEF

49.     Plaintiffs incorporate by reference and reallege each and every prior and succeeding allegation of this Complaint.

50.     The conspirators have violated Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act (15 U.S.C. § 13(a)), by discriminating in the price of electricity, a commodity, in contemporaneous sales to competing purchasers in interstate commerce, where the electricity is sold for use in the United States.  The conspirators have also violated Section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act (15 U.S.C. § 13(c)), by engaging in commercial bribery.  These violations occurred in the course of interstate commerce.

51.     At all relevant times, the conspirators have actively controlled CRS, whose sales were and are imputed to the conspirators for purposes of the price discrimination provisions of the Robinson-Patman Act.

52.     The effect of the discrimination – which has been sustained since January 2005 and continued unabated at least through 2008, if not longer – is significant and, unless restrained now and in the future, will substantially lessen competition in the markets in which certain Plaintiffs who belong to Subclass 1 (including Munafo, Inc. and possibly also BGR, Inc.) compete with the large customers who were the Favored Customers or with other companies as yet unknown to Plaintiffs who received rebates during the 2005-2008 period or since.  In the course of discovery in this case, Duke

Energy has taken the position that it need not produce information concerning any side deals after June 30, 2009. Such Plaintiffs have suffered antitrust injury by, among other things, having lost profits and sales to the Favored Customers or other as yet unknown rebate recipients.

53.     Plaintiffs seek injunctive and declaratory relief (but no damages) under the Robinson-Patman Act on behalf of business ratepayers who have competed with those receiving illegal rebates via side agreements.

## THIRD CLAIM FOR RELIEF

54.     Plaintiffs incorporate by reference and reallege each and every prior and succeeding allegation of this Complaint.

55.     The conspirators' misrepresentations and omissions described above were material, made with knowledge of their falsity and with the specific intent to deceive and mislead the Plaintiffs or with reckless disregard of the capacity to do so.

56.     Plaintiffs justifiably relied upon the conspirators' misrepresentations and omissions to their detriment.

57.     Plaintiffs were and continue to be injured as a proximate result.

## FOURTH CLAIM FOR RELIEF

58.     Plaintiffs incorporate by reference and reallege each and every prior and succeeding allegation of this Complaint.

59.     Ohio law prohibits public utilities from directly or indirectly granting rebates to only certain consumers and from extending a privilege to some consumers without extending the same to all consumers. RC §§ 4905.32 and 4905.33(A).  Under Ohio law, a public utility may not "directly or indirectly" remit or refund "any rate, rental, toll or charge so specified, or any part thereof, or extend to any person, firm, or corporation, any rule, regulation, privilege, or facility except such as are specified" in its PUCO schedule "and regularly and uniformly extended to all persons, firms, and corporations under like circumstances for like, or substantially similar, service." RC § 4905.32.  Ohio law also provides, in relevant part, "No public utility shall directly or indirectly, or by any … rebate, drawback, or other device or method, charge, demand, collect, or receive from any person, firm, or corporation a greater or lesser compensation for any services rendered, or to be rendered … than it charges, demands, collects, or receives from any other person, firm, or corporation for doing a like and contemporaneous service under substantially the same circumstances and conditions." RC § 4905.33(A).  Thus, according to the law of the case established by the Sixth Circuit's opinion in Case No. 10-3604, "The selective payment of rebates constitutes a felony under Ohio law. *See* Ohio Rev.Code §§ 4905.32-33(A), 4905.56, 4905.99." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 804 (6th Cir. 2012).

60.     The conspirators conspired to violate and did violate Ohio law by granting a privilege or rebate to certain customers, while failing to offer the same or a

similar rebate or privilege to all other consumers, including Plaintiffs and the Class they seek to represent.

61.     The conspirators flagrantly disregarded Ohio corporate policy and law by creating and/or employing CRS, an unregulated alter ego of Cinergy.

62.     There were, therefore, thousands of overt acts in furtherance of the conspiracy relating to Plaintiffs and other victims, which occurred during the relevant time period.   These overt acts included misrepresentations or omissions made in furtherance of the schemes, as well as other overt acts that may not themselves have constituted misrepresentations but were undertaken as an integral part of the schemes, and in furtherance thereof.

63.     As a direct result of the conspiracy alleged herein, Plaintiffs and the Plaintiff Class have been injured in an amount to be determined at trial.

64.     The conspirators deliberately and repeatedly concealed evidence of their wrongdoing from Plaintiffs and the general public.

### PUNITIVE DAMAGES

65.     Plaintiffs incorporate by reference and reallege each and every prior and succeeding allegation of this Complaint.

66.     The conduct of the conspirators was knowing, intentional, done with malice and/or aggravated or egregious fraud, demonstrated a complete lack of care, and was in conscious disregard of the rights of Plaintiffs and the Plaintiff Class.  Plaintiffs

and the Plaintiff Class are therefore entitled to an award of punitive damages, in conjunction with the foregoing claims for relief.

## PRAYER

WHEREFORE, Plaintiffs pray:

(a) For a judgment that Duke Energy has violated federal racketeering laws and state corrupt activity laws (18 U.S.C. § 1962(c) and R.C. § 2923.32, respectively);

(b) For an order, under 18 U.S.C. § 1964 and R.C. § 2923.34, awarding to Plaintiffs and the Plaintiff Class treble damages as a result of Duke Energy's violation of the federal racketeering laws and state corrupt activity laws;

(c) For a judgment that Duke Energy has violated Section 2 of the Clayton Act (15 U.S.C. §§ 13(a) and (c));

(d) For a judgment that Duke Energy has committed fraud, and for an order awarding to Plaintiffs and the Plaintiff Class damages therefor;

(e) For a judgment that Duke Energy has violated RC §§ 4905.32 and 4905.33(A), and for an order awarding to Plaintiffs and the Plaintiff Class damages therefor;

(f)     For a judgment that Duke Energy has conspired to violate RC §§ 4905.32 and 4905.33(A), and for an order awarding to Plaintiffs and the Plaintiff Class damages therefor;

(g)     For equitable relief requiring that Duke Energy extend to the members of the Plaintiff Class rebates comparable to those already paid to the Favored Customers pursuant to all side deals;

(h)     For a declaratory judgment that Duke Energy has violated RC §§ 4905.32 and 4905.33(A), and for an order awarding to Plaintiffs and the Plaintiff Class damages therefor;

(i)     For an order preliminarily and permanently enjoining Duke Energy, its officers, agents, employees, successors, and all persons or entities in active concert or participation with them, from engaging in, carrying out, or renewing any contracts, agreements, policies, practices or understandings, or claiming any rights thereunder having the purpose or effect of continuing, reviving, or renewing the aforesaid violation of the federal racketeering or antitrust laws, or state-law violations, in accordance with the provisions of 18 U.S.C. § 1964 (racketeering), 15 U.S.C. § 26 (antitrust), R.C. 2923.34 (state corrupt activity), and other applicable statutes;

(j)     For compensatory and punitive damages in accordance with Ohio law;

(k)     For the cost of their suit and reasonable attorneys' fees; and

(l)     For such other and further legal and equitable relief as the Court may

deem just and proper.

Respectfully submitted,

/s/ Paul M. De Marco
Paul M. De Marco                    Randolph H. Freking
W.B. Markovits                      Kelly Mulloy Myers
Louise M. Roselle                   George M. Reul, Jr.
Christopher D. Stock                FREKING & BETZ, LLC
MARKOVITS, STOCK                    525 Vine Street, 6th Floor
  & DeMARCO, LLC                    Cincinnati, OH  45202
119 East Court Street               Phone:  (513) 721-1975
Suite 530                           Fax:  (513) 651-2570
Cincinnati, OH 45202                *randy@frekingandbetz.com*
Phone:  (513) 651-3700              *kmyers@frekingandbetz.com*
Fax:   (513) 665-0219               *greul@frekingandbetz.com*
*pdemarco@msdlegal.com*
*bmarkovits@msdlegal.com*
*lroselle@msdlegal.com*
*cstock@msdlegal.com*

Counsel for Plaintiffs

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims triable to a jury.

/s/ Paul M. De Marco

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2013, the foregoing proposed amended complaint was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


/s/ Paul M. De Marco