# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY WILLIAMS**, *et al*. | : | **Case No.: 1:08-CV-00046** |
| | : | |
| | : | **Chief Judge Edmund A. Sargus** |
| **Plaintiffs,** | : | |
| | : | **Magistrate Judge Norah M. King** |
| **v.** | : | |
| | : | |
| | : | |
| **DUKE ENERGY INTERNATIONAL, INC.**, *et al*. | : | |
| | : | |
| **Defendants.** | : | |

---

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AND AWARD ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS, INCLUDING PLAINTIFFS' RESPONSE TO THE OBJECTION OF DAVID FERENCE AND TO THE LETTER RECEIVED FROM GARY AND LISA CLIFTON, AND ATTACHING PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Anthony Williams, BGR, Inc., Munafo, Inc., and Aikido of Cincinnati ("Lead Plaintiffs" or "Class Representatives"), on behalf of themselves and the Class they represent (collectively, "the Class" or "Plaintiffs"), submit this Reply in further support of their Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Incentive Awards, including: (1) Plaintiffs' Proposed Findings of Fact and Conclusions of Law Granting Final Approval of Class Action Settlement, Approving Plan of Allocation, Overruling the Objection of David Ference, and Granting Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Payment of

1

Incentive Awards ("Plaintiffs' Proposed Findings of Fact and Conclusions of Law");[1] and (2) Plaintiffs' Response in Opposition to the Objection of David Ference and to the Letter Received from Gary & Lisa Clifton.[2]

## MEMORANDUM IN SUPPORT

### INTRODUCTION

After agreeing with Defendants to resolve the above-captioned action in exchange for $80,875,000, Plaintiffs complied with the Court's October 21, 2015 Order granting preliminary approval of this settlement ("Preliminary Approval Order"). In complying with the Court's Preliminary Approval Order, Plaintiffs, through the Court-approved class action administrator, Garden City Group ("GCG"), implemented a comprehensive notice program beginning on December 15, 2015 including the following: (1) roughly 400,000 copies of the Settlement Notice were mailed to potential class members; (2) the Summary Notice was published in the *Cincinnati Enquirer*, *Dayton Daily News*, *Hillsboro Gazette*, and *Wilmington News Journal*; (3) the Summary Notice was sent to the email addresses Duke had for some of the potential class members; (4) a copy of the Longform Notice was posted on the Class Action Website – www.dukeclassaction.com; and (5) a geographically targeted ad describing the Settlement and the action has been and is being posted on social media websites such as Facebook. All forms of notice included the URL of the Class Action Website. The Longform Notice clearly indicated the Court's March 14, 2016 deadline for objecting to the Settlement, including listing the criteria for submitting a qualifying objection. Longform Notice, ¶¶56-64. On March 14,

---

[1] Plaintiffs' Proposed Findings of Fact and Conclusions of Law are attached as Exhibit 1.
[2] Unless defined herein, certain capitalized words incorporate by reference the definitions included for such words as included in the Stipulation.

2016, Plaintiffs received notice through the Southern District of Ohio's ECF system that David Ference had filed an objection through his counsel, Simina Vourlis.

The reaction of Class Members to the settlement has been overwhelmingly positive. As of March 28, 2016, roughly three weeks before the claim filing deadline, there are over 153,000 claims filed.[3] Declaration of Jose Fraga ("Fraga Dec."), ¶9. This amounts to approximately 40% of those Class Members given direct notice via postcard, and approximately 13% of all estimated Class Members. *Id.* This claims rate is already in excess of what was expected by GCG and Plaintiffs' Counsel based on comparable settlements, and is indicative both of appropriate notice and class approval. Fraga Dec., ¶¶9-10; Supp. Dec., ¶¶5-6. A similar indication of approval is the fact that of the relatively small number of Class Members who asked to be excluded from the Class when originally given notice of class certification (*i.e.*, only 256), 71 have now filed claims to participate in the settlement. Fraga Dec., ¶11. The Settlement Website – www.dukeclassaction.com – has received over 75,000 unique visitors, and the telephone hotline for this case has received 14,000 calls. *Id.*

On November 23, 2015, the Court approved and appointed a five-member Class Benefit Fund Board of Trustees. Doc. No. 250. The intent of appointing the Board and allowing them to begin working preliminarily was twofold: (1) it allows the Board to present ideas prior to the fairness hearing scheduled for April 18, 2016, and allows the Class to evaluate and provide input into the activities of the Board; and (2) it will allow,

---

[3] Supplemental Joint Declaration of W.B. Markovits and Randolph H. Freking in Support of Plaintiffs' Reply in Support of Their Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Award of Attorneys' Fees, Expenses, and Incentive Awards, Including Plaintiffs' Response to the Objection of David Ference and to the Letter Received from Gary and Lisa Clifton, and Attaching Plaintiffs' Proposed Findings of Fact and Conclusions of Law ("Supp. Dec."), ¶5.

if the settlement obtains final approval, distribution of the Class Benefit Fund without undue delay.

The Board has met in person five times since its appointment. There was an initial organizational meeting on December 21, 2015, where attorneys for Plaintiffs and Defendants explained the nature and function of the Settlement, the Board, and the Fund, and planning took place for activities prior to the Fairness Hearing on April 18, 2016. Supp. Dec., ¶12.  The Board met on January 14, 2016, where the primary topic of discussion related to the best manner of obtaining input from those involved in energy efficiency programs that might benefit Class Members.  *Id.*  The Board met on February 1, 2016, heard presentations from and asked questions of various groups involved with energy efficiency programs, and engaged in planning of future efforts.  *Id.*  The Board met on February 24, 2016, where the primary discussion related to a blueprint for going forward, which has now been approved.  *Id.;* Exh. A (blueprint).  The Class has been kept informed of the activities of the Class Benefit Fund Board through postings of relevant documents and minutes on the website, www.dukeclassaction.com.

### A.     THE SOLE OBJECTION TO THE SETTLEMENT SHOULD BE OVERRULED.

Out of the more than one million class members in this case, only one objection has been filed.[4] The sole objection was filed by an objector and his counsel, both of

---

[4] Attached as Exh. B to the Supp. Dec. is a letter Plaintiffs' Counsel received from Gary and Lisa Clifton, in which they state that they "object" to the settlement, want their names removed, and want to opt out of any benefits.  The bases they address in their letter are: (1) Plaintiffs weren't harmed; (2) Duke will just pass on the cost of the lawsuit; and (3) Plaintiffs may have benefitted from the rebates given to commercial customers through lower prices of goods and services. *Id.* While the term "objection" is used, this appears to be more of an attempt to opt out than object. The requirements for a valid objection, which include filing with the clerk's office and serving upon the Defendants' counsel, were not met.  And this is not an objection in the typical sense of arguing that the settlement is inadequate—the Cliftons apparently believe instead that Duke did nothing wrong to harm class members, and that Duke may pass on the cost of the settlement to class members (which is specifically prohibited by the Stipulation). Stipulation, Doc. No.

whom appear to fall into the category of "professional" or "serial" objectors. This objection should be overruled for two primary reasons: (1) the objector, represented by counsel, failed to meet the requirements for filing a valid objection; and (2) the objections raised are in any case without merit.

>1.      **One Objection Out Of More Than A Million Class Members Is Powerful Evidence That The Settlement Is Fair, Reasonable, And Adequate.**

The fact that only one class member objected to the proposed settlement - where there are over a million class members and almost 400,000 direct notices were mailed - is "powerful evidence" that the settlement is fair, reasonable, and adequate. *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *7-8 (S.D. Ohio Aug. 19, 2009) ("The lack of significant objections is powerful evidence of the fairness of a proposed settlement."); *see also Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("A certain number of … objections are to be expected in a class action …. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *18 (N.D. Ohio Sept. 1, 2011) (approving the settlement as fair, reasonable, and adequate when only 61 out of approximately 1.4 million class members, or about .004% of the class, objected); *In re Delphi Sec. Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (approving the settlement as fair, reasonable, and adequate after one objection by a professional objector out of 442,000 notices sent); *Int'l Union v. Ford*

246-1, ¶2 ("The Settlement Sum will not be paid by Duke Energy Ohio and will not be funded with ratepayer monies.").

*Motor Co.*, No. 05-74730, 06-10331, 2006 WL 1984363, at *27 (E.D. Mich. July 13, 2006) (finding that 800 objectors out of 170,000 class members—less than one half of one percent—constituted a "very small level of opposition" which "is another reason to conclude that the Settlement is fair, reasonable, and adequate").[5]

A related indication of support is the fact that of the 256 class members who requested exclusion after the original notice and prior to settlement, 75 class members, upon learning of the settlement, have now sought *inclusion* by sending in a postcard claim form or by filing a claim online. Fraga Dec., ¶11. These Class Members have not strictly complied with opt-in procedures, but Plaintiffs' Counsel would request that this Court allow their claims to be considered as valid opt-ins.

2.     **The Sole Objection To The Settlement Appears To Be Brought By A "Professional" Or "Serial" Objector, Which Calls Into Question Its Validity.**

The one objection filed in this case was raised by David Ference, represented by counsel Simina Vourlis. *See* Doc. No. 255, filed March 14, 2016 ("Objection"). Ms. Vourlis is a seasoned objector's counsel and has recently represented class action objectors in two other cases in Ohio federal courts: *In re Ford Motor Co. Spark Plug & Three Valve Engine Products Liability Litigation*, Case No. 1:12-md-02316 (N.D. Ohio, E.D.), Doc. No. 111, filed December 22, 2015 ("the *Ford* objection"), and *Volz v. Coca-Cola*, Case No. 1:10-cv-000879 (S.D. Ohio), Doc. No. 58, filed November 3, 2014 ("the *Volz* objection"). The *Ford* objection is very similar to the Objection in this case in that the current Objection is in part a cut and paste from the *Ford* objection. For example, the

---

[5] In a settlement of this magnitude, the Court should expect to receive over 200 objections to the Settlement (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,* 57 VAND. L. REV. 1529 (2004).

Objection has the following section that makes absolutely no sense in the context of this case:

**UNFAIR SETTLEMENT - $300 CLAIM THRESHOLD**

> The Settlement Release is unfair to Class Members that are precluded from receiving benefits under the Settlement. If the Settlement is limited to claims above $300, then the Settlement effectively extinguishes the claims of every Class Member with damages less than the $300 threshold. The Court should limit the scope of released [*sic*] to individuals with claims above $300. Defendant should not get the benefit of a Release that extinguishes the Claims of Class Members that are not entitled to relief. Further, the Release should be limited to all 5.4L 3-valve engine vehicles identified in the Notice, not the "operative Complaint," which includes vehicles that are not covered by the Settlement.

Objection, at 3; *Ford* objection, at 3. No $300 minimum, 5.4L 3-valve valve engines vehicle, and/or Release exist in this case. Furthermore, the Objection includes a heading titled "EXCLUSION OF CLASS MEMBERS – DIY OWNERS." Objection, at 3. DIY Owners are not a part of this case, making this another example of Ms. Vourlis's cut and paste job from the *Ford* objection. *See Ford* objection, at 3. Notably, in the *Ford* case, all objections by Ms. Vourlis's client were overruled. *Ford*, Doc. No. 1222, filed January 26, 2016.

David Ference, the objector in this case, also filed the *Volz* objection. The *Volz* objection was overruled, he appealed, and the appeal was withdrawn, with no change to the settlement other than a likely payment to the objector. *See Volz* Doc. No. 70, filed March 30, 2015, approving settlement and dismissing the action with prejudice; Doc. 71, filed March 31, 2015, granting motion for attorney fees; Doc. No. 72, filed April 21, 2015, notice of appeal filed by Ms. Vourlis on behalf of David Ference; Doc. No. 17, filed June 1, 2015, stipulation of dismissal in Case No. 15-3443 in the Sixth Circuit signed by Ms. Vourlis on behalf of David Ference.

As noted by courts within this Circuit, "class actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away." *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2016 WL 320182, at *8 (N.D. Ohio Jan. 27, 2016), *citing In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753-54 (S.D. Ohio 2008).[6] For this reason, "federal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003). Unfortunately, the cut and paste[7] Objection in this case appears to fall squarely into this category.

3.    **The Objector, Represented By Counsel, Failed To Meet The Basic Requirements For A Valid Objection, And On This Basis Alone, The Objection Should Be Overruled.**

---

[6] *See also Barnes v. FleetBoston Fin. Corp.,* No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *3–4 (D. Mass. Aug. 22, 2006)*,* where the court stated:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

In *In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 214 (S.D.N.Y. 2010), *reconsideration denied*, 2010 WL 2605233 (June 28, 2010) *and opinion clarified,* 2010 WL 5186791 (July 20, 2010), the court found attorneys to be "serial" objectors and required an appeal bond.

[7] John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to Do About Them?*, 39 FLA. ST. U. L. REV. 865, 922-23 (2012) (noting that courts should "also be allowed to consider the quality of the briefs filed and argument made by the objector in the district court" when considering the legitimacy of the objection).

There is absolutely no reason why the Objection should not be held to all of the requirements set forth in the Notice. Mr. Ference is not a *pro se* objector perhaps deserving of some leeway. He is an experienced objector, represented by experienced objecting counsel whose website (www.vourlislaw.com) identifies her as a "Board Certified Civil Trial Lawyer."[8] Yet, his Objection fails to meet the Notice's fundamental requirements for submitting an objection to the settlement,[9] and should be overruled on that basis alone. *See Ford*, Doc. No. 122, filed January 26, 2016 ("Furthermore, even if Mr. Kron were a Settlement Class Member, he could be foreclosed from presenting his objection as a result of his deliberate refusal to comply with this Court's Order regarding the information a valid objection must contain."). Furthermore, courts have readily overruled class action objections failing to meet settlement notice requirements for submitting a valid objection. *Moore v. Verizon Commc'ns Inc.*, No C 09-1823 SBA, 2013 WL 4610764, at *11-12 (N.D. Cal. Aug. 28, 2013); *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 92581444, at *3 (N.D. Cal. Dec. 18, 2015) (noting that the court may "refuse to consider the objections at issue" solely because they were procedurally improper); *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *6-7 (N.D. Cal. Nov. 27, 2013) (overruling procedurally deficient objections that failed to meet the requirements for objecting to the settlement, such as failing to contain a phone number, or a statement regarding whether the objector planned to appear at the final approval hearing); *Perkins v. LinkedIn Corp.*, No 13-CV-04203-LHK, 2016 WL 613255, at *3-4 (N.D. Cal. Feb. 16, 2016) (overruling objections from 77 individuals "who failed to comply with the procedural requirements set forth in this Court's order

---

[8] Ms. Vourlis's website, however, does not specify the name of the certifying organization. *See* Rule 7.4(e)(1) and (2) of the Ohio Rules of Professional Conduct.
[9] The Objection states that Mr. Ference has read the Class Notice. Objection at 1.

granting preliminary approval"). In *Moore v. Verizon*,[10] the court reviewed the proposed objections and noted that:

> [a]ll such objections must be in writing and include: (i) the name, address, and telephone number of the objecting Settlement Class Member; (ii) a detailed statement of objections to be made, including all factual and legal support for such objection; (iii) any evidence supporting the objection that is intended to be introduced in support of the objection, including evidence of the objector's membership in the Settlement Class…. Objections not filed and served in accordance with this paragraph shall not be received or considered by the Court. Any Settlement Class Member who fails to timely file and serve a written objection in accordance with this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, to the fairness, reasonableness, or adequacy of the Settlement, to the payment of attorneys' fees, costs, and expenses, the payment of incentive awards, or to the Final Approval Order or the right to appeal the same.

Applying the notice's requirements to the objections submitted, the court in *Moore* overruled 16 objections for failing to meet the notice's requirements for objecting to the settlement. *Id*. at *11-12. The court reasonably rejected Mr. Rourke's objection solely because it "does not provide his phone number." *Id*. at *12. Similarly, the court in *Moore* also reasonably rejected five other objections because they did "not provide the caption and case number appearing on the Settlement Class Notice." *Id*.

Unlike the examples provided in *Moore*, where the court properly overruled objections for a single procedural deficiency, the Objection in this case has several procedural failures. Here, the Notice required the following:

- Any objection must state the name, address and telephone number of the person objecting. Notice, ¶59. The Objection does not include Mr. Ference's address and telephone number.

- Any objection must include documents sufficient to prove objector's membership in the Class such as "proof of payment to Duke for electric services during the Class Period at an address in Southwest Ohio and/or ownership or control of a property in Southwest Ohio that received Duke electric service during the Class

---

[10] *Moore*, 2013 WL 4610764, at *11.

Period." Notice, ¶59. The Objection does not. It includes as an exhibit a copy of an online claim form titled "CONFIRMATION OF CLAIM FORM SUBMITTAL." But a claim can be submitted by anyone, Class Member or not, resulting in an immediate provision of a claim number and Confirmation of Claim Form Submittal form. It is only once a claim is processed that a determination can be made whether a submitter is or is not a Class Member. Accordingly, Mr. Ference failed to meet the Notice requirement of proving his membership in the Class.

- Any objection filed by an objector represented by counsel must include a notice of appearance by the counsel served on the Court and counsel so that it is received on or before March 14, 2016. Notice, ¶62. No such notice was filed or served.

Furthermore, the Notice prominently states that "**[u]nless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, or Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.**" Longform Notice, ¶64 (emphasis in original). Objector, represented by an attorney experienced with class action objections, failed to comply with the basic Notice requirements he claims to have read. For this reason alone, the Court should overrule the Objection in its entirety.

### 4. Even If The Merits Of The Objections Are Addressed, They Should Be Overruled.

Even were this Court to consider the merits of the arguments raised in the Objection (those relating to this litigation as opposed to other litigation), the Objection should be overruled. Each of the arguments in the Objection related to this case is without merit.

### A. The Exclusion Of Claims Under $10 Is Reasonable And Warranted.

Objector asserts that the proposed $10 *de minimis* threshold is unreasonable, arbitrary, and unfair, claiming there is no reason to deny a claim because it is less than

$10. To the contrary, there are a number of reasons in this case to deny claims of less than $10, which is a common *de minimis* threshold.[11] Fraga Dec., ¶5.

The $10 minimum was proposed after discussion between Plaintiffs' Counsel and the claims administrator, GCG. The experience of both led to the proposal, which was based upon a number of factors. Settlement cash distributions involve costs: cutting a check, mailing a check, canceling checks that are lost, misplaced or never received, possibly reissuing checks, and responding to complaints or questions. Supp. Dec., ¶7; Fraga Dec., ¶¶6-7. Claimants who receive small settlement amounts impose disproportionately larger costs upon a settlement, in part because they are less likely to cash their checks. Supp. Dec., ¶7; Fraga Dec., ¶¶6-7.

The likely administrative cost of distributing payments for claims below $10 will not be known with specificity until claims are actually submitted, but a reasonable

---

[11] *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. CV–02–1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007) ("*de minimis* thresholds for payable claims are beneficial to the class as a whole since they save the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs and courts have frequently approved such thresholds, often at $10."); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (overruling objection to $10 threshold); *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09 Civ. 6351(RJS), Doc. No. 136, at 109 (approving $10.00 distribution threshold); *In re Wachovia Equity Sec. Litig.*, No. 08 Civ. 6171(RJS), Doc. No. 98, at 13 (same); *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, No. 07 Civ. 909(RJS), Doc. No. 62, at 10 (same); *Hill v. State St. Corp.*, No CIV.A. 09-12146-GAO, 2015 WL 127728, at *12 (D. Mass. Jan. 8, 2015) appeal dismissed, 794 F.3d 227 (1st Cir. 2015) (approving $10 *de minimis* threshold); *City of Livonia Emp. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329(RJS), 2013 WL 4399015, at *3 (S.D.N.Y. Aug. 7, 2013) (approving $10 distribution threshold as "entirely reasonable"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (approving $10 *de minimis* provision and stating that "[c]lass counsel are entitled to use their discretion to conclude that, at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their *de minimis* amounts of relief); *see generally* 2 Joseph M. Mclaughlin, *Mclaughlin on Class Actions* § 6:23 (10th ed. Westlaw 2013) ("Courts have recognized that minimum payment thresholds for payable claims benefit the class as a whole because they protect the settlement fund from being depleted by the administrative costs associated with claims unlikely to exceed those costs. Courts should approve such thresholds, with $10 being a fair and commonly used figure.").

Ironically, an objector in a recent case raised as an objection the *failure* to impose a $10 *de minimis* threshold. *In re Polyurethane Foam Antitrust Litig.*, 2016 WL 320182, at *9. The Court overruled the objection, acknowledging that it might be appropriate to impose a $10 minimum in a case, but it was not shown as necessary by the objector in that case.

estimate can be made at this stage. At slightly more than the current claims rate, it is estimated that less than 1% of the Class Members would file claims not meeting the $10 *de minimis* threshold, and their claims would total less than $50,000 – that is, less than one thousandth of the amount allocated for distribution. Supp. Dec., ¶8. The total cost of administrating the claims failing to meet the threshold could then meet or exceed many of the payments themselves. *Id.* A $10 *de minimis* amount that would likely impact less than 1% of eligible claimants would ensure a more efficient distribution to the remaining over 99% of Class Members. *Id.*

> **B.** **The Class Benefit Fund Is Not A *Cy Pres* Remedy, And Even If Considered As Such, It Meets The Criteria Asserted By Objector.**

Objector asserts that the monies allocated to the CBF are an inappropriate *cy pres* remedy. Objection at 2-3. As explained in detail below, the creation of the CBF is not a *cy pres* remedy; even if it were, it would meet the *cy pres* standards asserted by Objector; and the Objection is legally and factually infirm, for at least the following reasons:

- Objector asserts that the $8 million CBF distribution is a "*cy pres*" payment that is "contrary to the law of this circuit." Objection at 2-3.

    - Despite its reference to the law of this circuit, the Objection cites no Sixth Circuit law on this point. *Cy pres* remedies are, in any case, supported within this Circuit.

- Objector argues that any distribution to either the CBF or "another *cy pres* beneficiary" should not exceed the benefits to either subclass.

    - The CBF is not a "*cy pres*" beneficiary.

    - The cash benefits to both subclasses will, in any case, substantially exceed the benefit to the CBF.

- Objector acknowledges that "the CBF may be an adequate *cy pres* recipient," but argues there should be no reversion to Duke.

o The chances of any significant, or indeed any, reversion to Duke are minimal.

- Objector argues that a *cy pres* award is appropriate only when "settlement funds remain after all claims are satisfied or when distribution of funds to all class members is not feasible (for example, because recipients cannot be located)." Objector argues that, due to a cap on distributions to class members, class members "are not receiving their full damages."

    o If this were a *cy pres* remedy, the standard above would be met. The distribution to class members from the two $25 million funds will more than compensate class members making claims and receiving distributions for a reasonable measure of their damages. And this is in fact a case where distribution of funds to all class members is not feasible.

A *cy pres* remedy is often employed in a class action context, and is generally considered to entail the distribution of unclaimed funds. *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); *Tennille v. W. Union Co.*, 809 F.3d 555, 560 (10th Cir. 2015); *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, 161 (2d Cir. 2005); *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682–83 (8th Cir. 2002). That is not the basic structure of this settlement, nor is it the rationale for the creation of the CBF.

The CBF was proposed as part of the settlement structure due to the factual context of this case. Supp. Dec., ¶10. We are now more than ten years removed from the beginning of the Class Period. Not surprisingly, Plaintiffs' Counsel could only obtain good addresses for slightly less than 400,000 of the more than 1.2 million potential Class Members. Recognizing that due to time and circumstances a direct monetary distribution to known Class Members would be unlikely to reach all Class Members, Plaintiffs' Counsel sought a way to provide a direct benefit to those silent Class Members least likely to make a claim. And Plaintiffs' Counsel recognized that those least likely to make a claim would include those most in need of a benefit—the old, the poor, the transient. The solution was to create a fund that would directly benefit those Class Members, and

would enhance benefits to those making a claim, by allowing use of monies for programs that would aid Class Members financially and otherwise with respect to energy efficiency, a subject matter directly at issue in the underlying lawsuit. *Id.*

While the CBF is therefore not a *cy pres* remedy, even if it were considered as such, it would find support, including within this Circuit. *See, e.g., Lessard v. City of Allen Park,* 470 F. Supp. 2d 781, 782-83 (E.D. Mich. 2007) (discussing use of *cy pres*). And the specific "*cy pres*" related issues raised in the Objection are without basis.

Objector argues that any distribution to the CBF or "another *cy pres* beneficiary" should not exceed the benefits to either subclass. Objection at 2. The CBF is funded with an allocation of $8 million. The Residential and Non-Residential Funds are funded each with an allocation of $25 million. Based on the number of claims already received to date, it is almost certain that each of the $25 million funds (minus small amounts of claims-related expenses and uncashed checks) will be distributed directly to Class Members. Supp. Dec., ¶11. The distribution to the CBF, which is likely to become only slightly higher than $8 million (due to reversion of uncashed checks to the CBF), will clearly not exceed the approximately $50 million dollars paid directly to the class members from the Residential and Non-Residential Funds. *Id.* This is far removed from the situation in the *Baby Products* case cited by Objector, a *cy pres* case where there ended up being an $18 million *cy pres* distribution and class benefits of only $3 million. *Baby Products Antitrust Litig.,* 708 F.3d 163, 180 (3d Cir. 2013).

Objector argues that a *cy pres* distribution is inappropriate because unused CBF funds revert to Duke. Objection at 2. But the only possibility for reversion to Duke would be if the CBF Board fails to allocate CBF funds to its designated programs on or

before the fifth anniversary of the Effective Date. Stipulation, Doc. No. 246-1, ¶19(e). Given that it is the Board's duty to ensure funds are allocated and that they have shown every intention of doing so, the chance that funds will remain unallocated after five years is negligible. Supp. Dec., ¶11.

Objector argues that due to a cap, Class Members "are not receiving their full damages," and a *cy pres* award is appropriate only when "settlement funds remain after all claims are satisfied or when distribution of funds to all class members is not feasible (for example, because recipients cannot be located)." Objection at 2. As discussed above, simply cutting checks to all Class Members in this case is not feasible. But the cash distributions to Class Members that will be made will provide compensation of a reasonable measure of damages, and anything greater would arguably provide simply a windfall, based on the following:

- A reasonable measure of damages in the underlying case, acknowledged both by Plaintiffs' expert and by the Court, was the amount of the illegal rebates - $73 million. Supp. Dec., ¶14.

- To fully compensate the class under this measure, assuming all class members made claims, $73 million would have to be distributed. *Id.*

- But Plaintiffs' Counsel know that the claims rate in this case will not be 100%. It is approaching 15%, and could possibly get as high as 20%. *Id.*

- To compensate 20% of the class fully under this measure of damages, Plaintiffs' Counsel would only need to distribute $14.6 million (20% of $73 million). *Id.*

- The Settlement is in fact going to distribute to Class Members an amount closer to $50 million in cash (the two funds minus claims-related expenses). *Id.*

- The aggregate of the two payment funds — $50 million — is sufficient to compensate those Class Members making claims in amounts three times the measure of damages acknowledged by Plaintiffs' expert and the Court, a result that would be consistent with Plaintiffs' claims in the underlying litigation for treble damages. *Id.*

It appears, therefore, that under the proposed settlement the class members will already obtain a full measure of damages, and therefore a *cy pres* distribution would be warranted under the case law cited by Objector. Courts of appeals have approved *cy pres* distributions where all class members submitting claims have already been fully compensated for their damages by prior distributions. *See, e.g., In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 34–35 (1st Cir. 2012) (*cy pres* distributions are preferable to providing windfall recoveries to claimants).

Objector would have this Court adopt wholesale the ALI Principles relating to *cy pres*, something that has not even been done by the courts Objector cites. In fact, the *Baby Products* court held the following, which we believe would be an appropriate view if this were a *cy pres* situation:

> Although we agree with the ALI that *cy pres* distributions are most appropriate where further individual distributions are economically infeasible, we decline to hold that *cy pres* distributions are only appropriate in this context. Settlements are private contracts reflecting negotiated compromises. *Sullivan,* 667 F.3d at 312. The role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly. The Court must determine whether the compromises reflected in the settlement—including those terms relating to the allocation of settlement funds—are fair, reasonable, and adequate when considered from the perspective of the class as a whole.

*Baby Products*, 708 F.3d at 173-74. Plaintiffs' Counsel submits that, when viewed from the perspective of the class as a whole, the creation of the CBF is a key and commendable part of the overall fair resolution of this case.

C. **Interest Earned Is Not Restricted To Benefit The Class, But Will Be So Restricted As A Practical Matter.**

Under a cut and paste heading of "Exclusion of Class Members – DIY Owners" that appeared in the *Ford* objection, Objector argues that the Settlement should be denied

17

because it does not direct earned interest to be paid only to the Class, rather than to Duke or Plaintiffs' Counsel. Objection at 3. As ostensible support for the proposition that interest earned is reserved for the class alone, Objector cites one case where the court denied class counsel's request for a portion of the interest earned on the settlement sum. *Id., citing In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997). But this early case is hardly black letter law, and it is common in more recent cases both in the Sixth Circuit and elsewhere that interest earned on settlement funds can be allocated, for example, to attorneys' fees. *See, e.g., In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-CV-83, 2014 WL 2946459, at *3 (E.D. Tenn. June 30, 2014); *In re Cardizem CD Antitrust Litig.*, No. 01-70490, 2005 WL 2179383, at *1 (E.D. Mich. Sept. 9, 2005), *abrogated on other grounds in part sub nom. In re Cardizem CD Antitrust Litig.*, 481 F.3d 355 (6th Cir. 2007); *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 163023, at *8 (N.D. Ill. Jan. 18, 2006*); Gustafson v. Valley Ins. Co.*, No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004); *In re Remeron End-Payor Antitrust Litig.*, No. CIV. 02-2007 FSH, 2005 WL 2230314, at *33 (D.N.J. Sept. 13, 2005); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99MDL1317, 2005 WL 2451958, at *2 (S.D. Fla. July 8, 2005). Regardless, the chance that any interest in this case would be allocated to either Duke or Plaintiffs' Counsel is essentially nil.

Duke could be allocated interest only in the case of a reversion to Duke of funds that bore interest. Under the Stipulation, any reversion from $25 million Residential Class Member Payment Fund and the $25 million Non-Residential Class Member Payment Fund would likely be limited to uncashed checks, which would revert not to

Duke but rather would be added to the CBF.[12]  As previously discussed, there is little

possibility that the CBF monies will not be spent, which is the only situation where there

could be a reversion to Duke.

Plaintiffs' Counsel would be allocated interest only if fees and expenses sit in

escrow and gather interest before disbursement.  The Stipulation provides, however, that

fees and expenses will be deposited by Duke into the escrow account and once deposited

can, at Plaintiffs' election, be paid immediately to Plaintiffs' Counsel notwithstanding

subsequent judicial review.  Stipulation, ¶29.  This is a so-called "quick pay" provision.

Provisions of this type are increasingly used in settlements as a recognized means to

combat, in part, the ability of professional objectors to exert financial pressure on class

counsel. *See In re LivingSocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 22 (D.D.C.

2013) (citing cases); *see also* John E. Lopatka & D. Brooks Smith, *Class Action

Professional Objectors: What to Do About Them?*, 39 FLA. ST. U. L. REV. 865, 903-06

(2012) (discussing use of quick-pay provisions); Brian T. Fitzpatrick, *The End of

Objector Blackmail?,* 62 VAND. L. REV. 1623, 1640-41 (2009) (same).

There will almost certainly be no large allocation of any interest to either Duke or

Plaintiffs' Counsel.  Objector's argument with respect to allocation of interest is contrary

to prevailing law, at best theoretical, and lacks merit.

> ### D. Objector's Arguments Regarding Reduction of Fees Based Upon Reversion And Claims Rates Misconstrues The Settlement.

---

[12] Stipulation, Doc. No. 246-1, ¶¶17-18.  At the time the Stipulation was drafted, there was also the possibility of a reversion to the CBF if there were so few claims that monies were left after maximum payments were made.  Given the number of claims that have already been made, that is not possible with respect to residential claims, and extremely unlikely with respect to non-residential claims. Supp. Dec., ¶11.  With respect to non-residential claims, if any significant monies would revert to the CBF due to the maximum payment being set at approximately $4000, Plaintiffs' Counsel could and likely would simply request that the maximum payment be increased.

Objector argues that the Court should reduce Plaintiffs' Counsel's fee: (1) in proportion to the amount of settlement funds that revert back to Duke; and (2) in proportion to the amount of benefits denied Claimants owed less than $10. Objection at 3. As discussed above, Objector misunderstands the possibility of reversion to Duke; the likelihood of any reversion to Duke is insignificant because such funds will be allocated to the CBF. With regard to the second proposition, as a factual matter a reasonable estimate of the total value of claims under $10 that would be denied based upon the $10 *de minimis* threshold is less than $50,000, or about .0006 % of the total settlement. Supp. Dec., ¶8. And as a legal matter, as discussed above, a *de minimis* threshold is reasonable and appropriate, and the monies "denied" those claimants will inure to the direct benefit of Class Members.

The cases cited by Objector for modification of fees based on significant reversion or low claims rates (generally in "claims made" settlements where the settlement amount paid by a defendant was dependent upon claims - not the case here), are inapposite. *Cf.* Objection at 3, *citing Pearson v. NBTY, Inc.*, No. 11 CV 7972, 2014 WL 30676, at *7 (N.D. Ill. Jan. 3, 2014) (one fourth of one percent claims rate), *appeal dismissed* (Apr. 1, 2014), *appeal dismissed* (Apr. 2, 2014), *rev'd and remanded*, 772 F.3d 778 (7th Cir. 2014). The claims rate here – already well above 10% with an expectation that a number of claims will be made closer to the April 13th claims deadline – is higher than expected, and higher than normal. Fraga Dec., ¶9; *supra* p. 3.

### E. The Incentive Awards Requested Are Reasonable.

Plaintiffs' Counsel has requested incentive awards of $20,000 for each of the four class representatives, totaling $80,000. The amounts requested are in line with amounts

that have been approved by courts both within and without this Circuit. *See, e.g., In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 7348208, *12-13 (N.D. Ohio Nov. 19, 2015) ($35,000 incentive award for each of the seven class representatives); *Brotherton*, 141 F. Supp. 2d at 913-14 (S.D. Ohio 2001) ($50,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990) (approving incentive awards ranging from $35,000 to $55,000); *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 WL 63269, at *7–8 (E.D. Pa. Jan. 3, 2008) (approving a $30,000 award for each class representative); *McBean v. City of New York*, 233 F.R.D. 377, 391–92 (S.D.N.Y. 2006) (stating incentive awards of $25,000–$30,000 are "solidly in the middle of the range"); *In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ. 03–0085 FSH, 2005 WL 3008808, at *18 (D.N.J. Nov. 9, 2005) ($60,000); *In re Remeron End–Payor Antitrust Litig.*, No. Civ. 02–2007 FSH, Civ. 04–5126 FSH, 2005 WL 2230314, at *33 (D.N.J. Sept. 13, 2005) ($30,000); *Hughes v. Microsoft Corp.*, No. C98–1646C, No. C93–0178C, 2001 WL 34089697, at *12-13 (W.D. Wash. Mar. 26, 2001) ($7,500 to $40,000).

Courts recognize that incentive awards are a typical and appropriate method of encouraging class members to become class representatives – an often time-consuming and difficult position that exposes a class member to attack. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). *See also Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14360, 2015 WL 1498888, at *14 (E.D. Mich. Mar. 31, 2015). District courts in the Sixth Circuit have considered the following factors in determining whether to approve incentive awards for class representatives:

(1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to

21

Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (awarding incentive awards of $50,000 to each class representative, for a total of $300,000).

Consideration of the *Enterprise* factors supports the requested incentive awards. The incentive awards are particularly appropriate for the class representatives in this case, who have undergone more than the average amount of time and trouble in fulfilling their duties. Supp. Dec., Exh. C. It has been more than eight years since discussions began with class representatives regarding their willingness to serve the class and place themselves at reputational risk by acting as a named plaintiff. During that period of time, they have had meetings with Plaintiffs' Counsel, they have kept abreast of the case by reading relevant documents, they have submitted to and prepared for depositions, they have answered interrogatories and produced documents in discovery, and have worked with Plaintiffs' Counsel through a long and arduous mediation and settlement process to effect the best possible settlement for the Class. *Id.* Each class representative has spent in excess of 200 hours on this matter. *Id.* The involvement and conduct of class representatives has been exemplary, and has led to a settlement that provides a substantial benefit to the Class. Supp. Dec., ¶3.

Another approach taken within this and other circuits is to consider the percentage of the total settlement that comprises the incentive awards. *Whitlock v. FSL Mgmt., LLC*, No. 3:10CV-00562-JHM, 2015 WL 9413142, at *9-11 (W.D. Ky. Dec. 22, 2015); *Kemp v. Unum Life Ins. Co. of Am.*, No. CV 14-0944, 2015 WL 8526689, at *7 (E.D. La. Dec.

11, 2015).  In *Whitlock*, the court surveyed and found a range of incentive awards from .0005 percent of the total settlement to .033 percent of the total settlement for incentive awards, and exercised its discretion to award .045 percent in that case.  *Id.*[13]  The requested incentive awards totaling $80,000 would be .0009 percent of the total settlement – decidedly on the low end of the spectrum.  Supp. Dec., ¶4.

Objector cites *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013), as support for his objection to the proposed incentive awards.  But the *Pampers* case is inapposite both factually and legally.  Factually, *Pampers* involved a proposed settlement where the named plaintiffs were to receive $1,000 per "affected child" while the class was to receive what the Sixth Circuit characterized as "worthless injunctive relief."  *Id.* at 715.  In this case, by contrast, the Class will receive substantial direct benefits, both from direct monetary payments and from the programs supported by the Class Benefit Fund.  And the legal situation that concerned the *Pampers* Court was one in which the incentive award encourages the class representatives to compromise the interest of the class for personal gain – which the Sixth Circuit believed took place in *Pampers*.  *Id.* at 722.  That did not occur here.  The primary terms of the settlement were negotiated without any

---

[13]  *Whitlock* cited the following cases:  *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving a $12,500 enhancement award to the named plaintiff from a $452,380 settlement representing .027 percent of the settlement award in a Fair Credit Reporting Act case); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving enhancement awards of $6,000 and $4,000 in an FLSA case); *E.E.O.C. v. Wal-Mart Stores, Inc.*, No. 6:01-CV-339-KKC, 2011 WL 6400160, at *3 (E.D. Ky. Dec. 20, 2011) (incentive payments ranging from $13,500 to $3,500 totaling $270,000 of a $11,700,000 settlement representing .023 percent of the settlement award); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 7348208, at *12-13 (.0005 percent of the total settlement in antitrust case); *Shane Group, Inc.*, 2015 WL 1498888, at *7 (E.D. Mich. Mar. 31, 2015), on appeal (.0055 percent of the total settlement in antitrust case); *Smith v. CSX Transp., Inc.*, No. 3:13 CV 2649, 2015 WL 4389574, at *4 (N.D. Ohio June 18, 2015) (.025 percent of the total settlement in train derailment case); *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, *2 (W.D. Ky. May 4, 2015) (.026 percent of the total settlement in a Telephone Consumer Protection Act case); *Hainey v. Parrott*, No. 1:02-CV-733, 2007 WL 3308027, at *5-6 (S.D. Ohio Nov. 6, 2007) (.033 percent of the total settlement in § 1983 action).

agreement or even substantive discussion regarding the nature or amount of incentive awards; the proposed incentive awards were raised later. Supp. Dec., ¶3. *See also In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-MD-2320-PB, 2015 WL 7282543, at *7 (D.N.H. Nov. 16, 2015) (distinguishing *Pampers*, where incentive awards were raised only after resolving proposed relief to the class as a whole).

## CONCLUSION

Plaintiffs respectfully ask this Court to grant final approval of the Settlement in this case as fair, reasonable, and adequate, to overrule the sole objection, and to approve the requested award of attorneys' fees, litigation expenses, and incentive awards.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Louise M. Roselle (0014844)
Paul M. De Marco (0041153)
Terence R. Coates (0085579)
MARKOVITS, STOCK & DEMARCO, LLC
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*lroselle@msdlegal.com*
*pdemarco@msdlegal.com*
*tcoates@msdlegal.com*

Randolph H. Freking
Kelly Mulloy Myers
George M. Reul, Jr.
FREKING, MYERS & REUL, LLC
525 Vine Street, Suite 600
Cincinnati, OH 45202
Phone: (513) 721-1975

Fax: (513) 651-2570
*randy@fmr.law*
*kmyers@fmr.law*
*greul@fmr.law*

*Plaintiffs' Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2016, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send notification of such

filing to counsel of record in this matter who are registered on the CM/ECF; and upon

counsel via electronic mail in this matter who is not yet registered on the CM/ECF:

Simina Vourlis, Attorney
The Law Offices of Simina Vourlis
1689 W. Third Avenue
Columbus, OH 43212
Email: svourlis@vourlislaw.com
*Attorney for David Ference, Objector*

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
MARKOVITS, STOCK & DEMARCO, LLC