## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

ANTHONY WILLIAMS, *et al.*

    Plaintiffs,

v.

DUKE ENERGY INTERNATIONAL, INC., *et al.*,

    Defendants.

Case No. 1:08-cv-00046
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS DISTRIBUTION ORDER

This matter comes before the Court on Plaintiffs' January 5, 2017, unopposed Motion for Class Distribution Order (Mot., ECF No. 276), pursuant to Rule 23 of the Federal Rules of Civil Procedure. In support, the Motion contains a Memorandum of Law, and three declarations. These declarations include more than 4,000 pages of exhibits, and information detailing the claims administration process undertaken by Plaintiffs' Counsel and the Settlement Claims Administrator, the Garden City Group ("GCG"). (*See* Markovits Decl. and Exhibits, ECF No. 276-2; Fraga Decl. and Exhibits, ECF No. 276-3; Lewis Decl. and Exhibits, ECF No. 276-4.)  The Motion for Class Distribution Order requests the Court to approve distribution of residential and non-residential settlement funds to the claimants whose claims were verified through the comprehensive process undertaken by Plaintiffs' Counsel and GCG, and to approve payment of administrative fees. (Mot., ECF No. 276, at pp. 2, 7-10.)

### I. Background

This claims administration work was undertaken pursuant to this Court's April 25, 2016, Opinion and Order Granting Final Approval of Class Action Settlement and Granting

Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards (Op. and Order, ECF No. 268), wherein the Court directed Plaintiffs' Counsel and GCG to "proceed with processing Claims and the administration of the Settlement under the terms of the Stipulation and Plan of Allocation and, upon completion of the claim processing procedure, to present to this Court a proposed final distribution order for the distribution of the remaining Settlement funds, as provided in the Stipulation and Plan of Allocation." (Op. and Order, ECF No. 268, ¶7.)

The Stipulation and Plan of Allocation ("Stipulation") approved by the Court provided for payments totaling $80,875,000.00 to compensate members of the Class, to pay attorneys' fees and expenses awarded by the Court, to pay for a Class Benefit Fund, and to pay related administrative expenses. (Stipulation, ECF No. 246-1, ¶¶ 2, 16; *See* Op. and Order, ECF No. 268, ¶6; Mot., ECF No. 276, at p. 2.) Plaintiffs assert that, to date, "[t]he Court has approved payments to the Claims Administrator of $349,121.36 in connection with its work for the Notice of Pendency notice program and some settlement administration. The Court also approved up to $18,000 of licensure, design, training and administrative support expenses for the Class Benefit Fund Board [Doc. #273] and grants totaling approximately $6,967,030.00 from the Class Benefit Fund to be paid from 2017-2019. To date, the Class Benefit Fund Board has received $47,873.58 for Board-related fees and expenses from May 2016 through November 2016. As of December 30, 2016, the total balance of the Settlement Fund, including accrued interest, is $56,756,125.17, with another $4,000,000 due to be paid into the Class Benefit Fund in June 2017." (Mot., ECF No. 276, at pp. 2-3; Markovits Decl., ¶2, ECF No 276-2.)

2

## II. Claims Administration Process

GCG and Plaintiffs' Counsel have proceeded to administer the settlement as ordered by this Court. Mr. Jose C. Fraga, Senior Director of Operations for Garden City Group, the Claims Administrator, explained the detailed process GCG employed to provide notice to the public, including publication in four newspapers, publication on *PR Newswire's* Ohio State newsline, and *PR Newswire's* Ohio Hispanic newsline, and posting a Facebook Notice targeted to Ohio. (Fraga Decl., ¶3, ECF No. 276-3.) Additionally, GCG created a website (www.dukeclassaction.com) dedicated to the settlement, and an email account dedicated to answering questions about the settlement process, info@dukeclassaction.com. (Fraga Decl., ¶¶8-9, ECF No. 276-3.) The website set forth key deadlines, listed events such as the Court's hearing dates, and provided answers to Frequently Asked Questions about the settlement. The website also provided a portal for filing claims online, a "Cure Portal" that provided step-by-step instructions to permit claimants to perfect deficient claims online, and a survey portal which permitted class members to designate their preferences regarding the Class Benefit Fund programs to provide to Plaintiffs' Counsel. (Fraga Decl., ¶8, ECF No. 276-3.) Furthermore, "[i]n the aggregate, GCG mailed over 390,000 Postcard Notice and Claims Forms to potential settlement class members. In addition, GCG emailed the summary notice to over 49,000 email addresses compiled as a result of the Pendency Notice Program." (*Id.* at ¶4.) GCG also maintained a toll-free telephone "hotline" to assist persons with questions about the settlement. As of December 29, 2016, GCG had answered 41,694 calls to the telephone hotline. (*Id.*, at ¶6.)

3

GCG, in conjunction with Plaintiffs' Counsel and Plaintiffs' Counsel's IT personnel and economist, have engaged in an extensive process to analyze and validate claims. This process included preparing detailed lists of:

(i) all valid and timely claims by Authorized Claimants; and claims that were submitted after the applicable claims deadline of April 13, 2016 but not later than July 31, 2016, that are otherwise valid ("Late But Otherwise Authorized Claims");

(ii) similar claims approved for payment in part;

(iii) claims for which Plaintiffs' Counsel are seeking the waiver of any deficiencies in whole or part; and

(iv) rejected claims that were deemed ineligible ("Rejected or Ineligible Claims").

(Mot., ECF No. 276, at p. 4; Fraga Decl., ¶10-29, ECF. No. 276-3.)

Importantly, GCG made substantial efforts to contact Residential Class Members who had submitted deficient claims, such as unsigned claims or claims that required additional information in order to substantiate the claimant's status as a Class Member during the Class Period. (Fraga Decl., ¶15-21, ECF No. 276-3.) Likewise, GCG made a comprehensive effort to contact Non-Residential Class Members who had submitted claims – deficient or otherwise – notifying them of deficiencies or, in the case of apparently valid claims, notifying them of the kWh usage information on which their claim would be based, and allowing them an opportunity to contest that kWh usage information if they felt it was incorrect. (*Id.*) In support of this effort, "GCG mailed a total of 30,039 Deficiency Letters" to both Residential and Non-Residential claimants who filed deficient claims, "plus an additional 10,927 Eligibility Letters" to claimants who "filed as, or were deemed to be, Non-Residential Class Members with apparently valid claims." (*Id.* at ¶19.) Claimants with apparently deficient claims received letters entitled "Notice of Conditional

Rejection of your Residential Claim or Notice of Conditional Rejection of your Non-Residential Claim" ("Deficiency Letters"). These Deficiency Letters informed potential claimants that they had the "right to disagree with GCG's administrative determination of deficiencies or ineligibility," and that they had a period of 20 days to provide GCG with information to cure the deficiencies. (Mot., ECF No. 276, at p. 6.)[1]

Each claim was assigned a number in order to preserve privacy. The exhibits to Mr. Fraga's declaration provide the claim number and corresponding amount of payment designated for each claim. (*See* Fraga Decl., ¶29, ECF No. 276-3, Exhs. B-1 through B-3.) Exhibit B-1 lists the claim numbers of the 199,602 claims that were determined to be eligible for payment, and the amount of each claim. Exhibit B-2 lists the claim numbers of the 1,597 additional claimants to be paid upon waiver of minor deficiencies, and the amount of each claim, and Exhibit B-3 lists the 17,896 claims that were rejected.

### III. Proposed Payment of Claims

The claims are proposed to be paid as follows:[2]

### A. Residential Class Members

The balance of the Residential Class Members Payment Fund is $25,021,279.59 (as of 12/30/2016):

1. Payments of $10.00 would be made to those potential Residential Class Members currently designated to receive less than $10.00. These payments total $13,340.00.

---

[1] Of the 40,966 Residential and Non-Residential claimants who were sent a Deficiency Letter or Eligibility Letter, 21,473 claims were successfully cured, and 1,597 claims were approved in the amount set forth in the Defendant utility's database, by waiving minor deficiencies in the claim. (Mot., ECF No. 276, pp. 6-7; Fraga Decl., ECF No. 276-3, ¶25.)
[2] *See* Markovits Decl., ECF No. 276-2, ¶¶ 4,5.)

5

2. From the remaining fund of $25,007,939.59 (as of 12/30/2016), the amount of $9,041.59 would be retained to resolve any future disputes.

3. The remaining amount of $24,998,898.00 would be distributed on a *pro rata* basis, based on service days within the Class Period, to all valid and timely claims and Late But Otherwise Authorized Claims.

4. The service days for Authorized Claimants who are Residential Class Members total 260,154,076 days.

5. Each Residential Class Member would receive $0.096146 per day, or $140.47 for a full Class Period at a single service address.

**B.     Non-Residential Class Members**

The balance of the Non-Residential Class Members Payment Fund is $25,021,279.59

(as of 12/30/2016):

1. Payments of $10.00 would be made to those potential Non-Residential Class Members currently designated to receive less than $10.00. These payments total $660.

2. From the remaining fund of $25,020,619.59 (as of 12/30/2016), the amount of $115,409.45 would be retained to resolve any future disputes.

3. The remaining amount of $24,905,210.14 would be distributed on a *pro rata* basis, based on service days within the Class Period and the usage formula[3] to all valid and timely claims and Late But Otherwise Authorized Claims. The claim amounts are set forth pursuant to the usage formula as follows:

   - Under 2000 kWh: 3,781 claimants, $673,032.00 in claims
     Average: $177.74 per claimant

   - >= 2,000 kWh AND < 1,000,000kWh: 7,965 claimants, $21,369,837.51 in claims
     Average: $2,682.97 per claimant

   - >= 1,000,000 kWh: 716 claimants, $2,864,000.00 in claims
     $4,000 per claimant.

---

[3] *See* Markovits Decl., ECF No. 272-2, Exhibit A.

6

## IV. CONCLUSION

The Court has reviewed the Motion and the supporting documents, and hereby **GRANTS** the Motion.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1. The Court approves the methodology for determination of Authorized Claimants of the Settlement Fund established by the Settlement of the Class Action;

2. The Court approves the timely valid claims, and permits the Claims Administrator to deem timely otherwise eligible claims that were submitted after the applicable claims deadline of April 13, 2016, but not later than July 31, 2016.

3. The Court approves those claims that the Plaintiffs' Counsel determined, based on the Claims Administrator's recommendation, should be deemed valid through the waiver of minor deficiencies in the claim.

4. The Court approves the rejection of those claims that the Claims Administrator has determined to be ineligible for award.

5. The Court approves the Claims Administrator's use of July 31, 2016 as a cut-off date for the initial filing of all claims, and directs that no further adjustments to existing claims will be accepted for claim cures submitted after December 12, 2016, except as otherwise approved by the Court.

6. The Court approves the distribution to Authorized Claimants of the portions of the Settlement Fund established by the Settlement of the Action for such distribution,

in accordance with the proposed distribution to Residential and Non-Residential Class Members set forth in Section III of this Opinion and Order.

7. The Court approves the final payment to Garden City Group of $1,950,878.64, the remaining Claims Administrator expenses, for completion of services, from the fund identified in paragraph 16(d) of the Stipulation.

8. The Court approves payment of technical support expenses to database consultant Media Stew of $88,755.00 from the fund identified in paragraph 16(d) of the Stipulation.

9. The Court approves reallocation of any residual funds remaining following distribution from the funds identified in ¶¶ 16(a), (b), (d) of the Stipulation to the Class Benefit Fund identified in ¶ 16(c) of the Stipulation.

**IT IS SO ORDERED.**

\_\_\_1-19-2017\_\_\_  
DATE

_____  
EDMUND A. SARGUS, JR.  
CHIEF UNITED STATES DISTRICT JUDGE